Mayer & Lowenstein *vs.* The Chattahoochee National Bank.

MAYER & LOWENSTEIN, plaintiffs in error, *vs.* THE CHAT-
TAHOOCHEE NATIONAL BANK, defendant in error.

1. Under the act of 1869, a garnishee must answer not only what he was
   indebted, etc., at the date of the summons of garnishment, but also
   " what he has become indebted to the defendant, or what property or
   effects of his he has received or got possession of, belonging to the
   defendant, between the time of the service and the answer ;" and
   under this rule, if a bank, under summons of garnishment, receives
   deposits of the defendant, and pays them to his checks, it is liable to
   the garnishing creditor for the amount deposited up to the time of the
   filing of the answer
2. When A deposits money in a bank, with directions that it is to be paid
   out to a check which he has given, or will give, to C, the money is still
   the money of A until the bank either pays it, or promises C to pay it,
   or unless it be deposited at the instance or procurement of C, or un-
   der an arrangement with him.

Garnishment. Banks. Deposit. Check. Before Judge
JAMES JOHNSON. Muscogee Superior Court. November
Term, 1873.

Mayer & Lowenstein brought complaint against McKee
Brothers for $375 26, balance due on a promissory note, dated
May 3d, 1867, with interest from September 6th, 1867.
Pending suit, to-wit: on March 11th, 1869, process of gar-
nishment was served on the Chattahoochee National Bank.
Judgment was obtained at the November term, 1870, on the
original cause of action against the defendants. On December
5th, 1873, the garnishee answered, admitting an indebtedness
to John G. McKee, a member of the firm of McKee Broth-
ers, at the time of the service of garnishment, of $8 47,
which sum, together with $2 48 interest, it paid into court.
This answer was traversed. Upon the trial of the issue thus
formed, the evidence made, in substance, the following case:

On March 11th, 1869, the date of the service of process of
garnishment, the books of the bank showed to the credit of
John G. McKee $8 47. Subsequent to said service there
were divers others credits amounting to $305 51. These
various deposits were made to meet checks which he had

drawn against the same. The bank subsequently paid said checks. As each deposit was made McKee would state that it was for the purpose of meeting some check which he had drawn. The account was kept in this manner merely as a " memorandum."

The court charged the jury, "that if the evidence in this case showed that these several amounts, appearing *to the* credit of McKee, since the service of said summons of garnishment, had been deposited by him under an agreement that they were to pay certain checks drawn against said deposits, and if the bank had so paid out said amounts to the parties holding said checks, it was only liable for the $8 47, with the interest, admitted to be due."

The jury returned a verdict for the plaintiffs for $8 47, with interest from March 11th, 1869.

Plaintiffs excepted to said charge, and now assign the same as error.

HENRY L. BENNING; G. E. THOMAS, for plaintiffs in error.

INGRAM & CRAWFORD; R. J. MOSES, for defendant.

McCAY, Judge.

1. The act of 1869 is very broad. The garnishee is to answer not only what he was indebted at the time of the service of the summons, but what he has become indebted to the defendant, and what effects he has received or got possession of, of his, between the date of the summons and the answer. A bank which receives a deposit from a debtor clearly becomes indebted to him if it is a general deposit, and has effects of his if it be a special one, and under the express words of the statute, the summons acts upon and stops it, and any payment to the debtor, or to his order, is at the risk of the bank. This may be very inconvenient, and we can well see how such a law may often work hardly, and be an injurious restriction on the dealings of men who owe debts. But the law-making

power has seen fit to declare its will in the matter, and it is not for the courts to alter it.

2. The only question there can be in this case is whether these deposits, made, as each was, for a special purpose, and under an express agreement between the debtor and the bank that they were made and received to pay certain specified checks which the debtor had drawn or would draw, continued the property of the debtor. The case in 15 *Georgia Reports*, of *Pace vs. The Trustees of Howard College*, 486, it seems to us, settles this question. It was there held that the deposit continued the property of the depositor until the bailee paid, or promised the person for whose use it was deposited to pay it. And this is undoubtedly the general rule: Owen *vs.* Bowen, 4 C. & P., 93, 96; Cobb *vs.* Beeke, 6 Q. B., 930; Surtees *vs.* Hubbard, 4 Esp., 203; Wharton *vs.* Walker, 4 B. & C., 163. The exceptions to the rule are special cases, as where the person to whom the money is ordered to be paid is interested in the consideration, or has himself procured, or directed, or agreed, that the deposit shall be made for his benefit. In such cases the depositor may be considered only as the agent of the party at interest in making the deposit and in contracting with the bailee for its delivery or payment to the true owner or beneficiary, and he, the depositor, loses control over it immediately on the deposit. In fact it is not his deposit at all, but left for the true owner by him as agent: Lampleigh *vs.* Braithwhite, 1 Smith's L. C., 67; Hut., 105; Townsend *vs.* Hunt, Cro. Car., 408; 11 Ad. & E., 452; Curtis *vs.* Collingwood, 1 Vent., 297; Martin *vs.* Hind, Cowper, 437; 3 B. & C., 462; 5 Dow. & Ry., 319; 4 B. & C., 664. See Addison on Contracts, page 941, where this subject is fully discussed and the authorities cited. There is no proof in this record going to show what were the relations of the checkholder to this deposit, except that the depositor declared at the time of making the deposit that the money was to be paid to the check. Whether the person to whose benefit it was deposited directed it to be done, or procured, or agreed that it should be done, or was in any way interested in the

consideration, does not appear.   As the case stands it is simply a case of a deposit of money by A, to be paid to his own order or to some third person, and is within the rule laid down in 15 *Georgia*.   As soon as the deposit was made the bank became the debtor of the defendant, and the summons of garnishment operated upon it.   In the case of Pace it was declared that if the depositee paid or promised the usee to pay before revocation, the property of the depositor would be divested.   In the present case the question must turn on the nature of the deposit at the time it was made, and whether, at that time, the property was in the depositor, since, if it was his then, the garnishment immediately covered it.   As we have said, that depends on whether the third person was interested in the consideration, or procured, or directed, or agreed that the deposit should be made to his use.   In that case the depositor, in making the deposit, might fairly be said to be acting, not for himself, but for the checkholder.   The entries in the book, by which it appears that the deposit was made to the credit of the depositor, would seem to militate against this; but that is only one mode of arriving at the truth, and may be rebutted by proof of the real truth of the case.   As it is, we feel constrained to reverse the judgment.

Judgment reversed.