[No. 13289.   Department Two. — July 20, 1891.]

# JAMES CASHMAN, RESPONDENT, v. C. H. HARRISON, APPELLANT.

BILL OF EXCHANGE — SETTLEMENT OF LIABILITY OF DRAWER TO PAYEE — BOND OF INDEMNITY — ASSIGNMENT OF FUND TO BE CREATED. — A written instrument in the form of a bill of exchange, executed by the drawer in settlement of a liability to the payee theretofore incurred by the drawer under a bond of indemnity to secure the performance of a charter-party by a third person, will be treated as a bill of exchange, and not as an assignment of a fund to arise from the sale of the cargo assigned by the drawer to the drawee, although it was understood between the parties that the proceeds of the sale were to be applied to the payment of the bill, if there was no agreement or understanding that the bill should be wholly satisfied from the fund to be realized from the sale, or by payment of less than the sum it called for, and it does not appear but that it was intended by the parties that the bill should have the legal effect of a bill of exchange.

ID. — EQUITABLE ASSIGNMENT — LIEN UPON FUNDS OF DRAWER — ACCEPTANCE. — A bill of exchange, not specifying any fund for payment, does not of itself operate as an equitable assignment, or give to the holder, either at law or in equity, a lien upon the funds of the creditor in the hands of the debtor, until after acceptance by the latter.

ID. — PAROL EVIDENCE — VARYING TERMS OF PAYMENT. — Parol evidence is inadmissible to vary or contradict a bill of exchange, except for the purpose of proving want of consideration, fraud, accident, or mistake, which might nullify the instrument; and is inadmissible to show a verbal agreement that it was to be paid at any other time than as specified, or was to be paid out of a particular fund or estate, or was otherwise qualified as to its terms.

ID. — PRESENTMENT FOR ACCEPTANCE — NOTICE OF DISHONOR — EXCUSE. — Presentment of a bill of exchange for acceptance or payment, and notice of dishonor, are excused as to the drawer, if at the time of drawing he had no reason to believe the drawee would accept or pay the same; and it is not necessary in such case to prove fraud on the part of the drawer.

ID. — WANT OF FUNDS IN HANDS OF DRAWEE — WITHDRAWAL OF FUNDS BY DRAWER. — Want of effects in the hands of the drawee of a bill of exchange excuses the holder from the necessity of presentment, as well as of giving notice of dishonor to the drawer; and if the drawer withdraws funds applicable to payment of the bill from the hands of the drawee, he commits a fraud by which he forfeits the right to require demand and notice, and precludes any possible prejudice to himself from the want thereof.

ID. — PROOF OF CONSIDERATION — REBUTTAL — ORDER OF PROOF — HARMLESS IRREGULARITY. — A bill of exchange being *prima facie* evidence of a sufficient consideration, where its consideration is in issue, evidence to prove consideration should be offered in rebuttal, and not in chief; but

where it is offered in chief, and not objected to on the ground that it is offered out of the proper order, or that it could properly be offered only in rebuttal, its admission as evidence in chief is a harmless irregularity.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion.

*E. F. Preston,* for Appellant.

*J. D. Sullivan, Henry McCrea,* and *Hepburn Wilkins,* for Respondent.

VANCLIEF, C. — This action is by the payee against the drawer of a bill of exchange, of which the following is a copy: —

"$2,019.70.

"SAN FRANCISCO, December 29, 1881.

"Pay to the order of James Cashman $2,019.70, gold coin of the United States, value received, and charge the same to account of                    C. H. HARRISON."

"To R. S. HOWLAND, San Francisco. No."

Of the defenses pleaded, two are alternately insisted upon here, viz.: 1. That the instrument was intended to effect merely an equitable assignment of a portion of a fund, and therefore is not what it purports to be; or 2. That if it be considered and treated as a bill of exchange, there was no presentment of it to the drawee for payment, and no notice to the drawer of its dishonor.

To excuse the non-presentment for payment, it was alleged in the complaint, and found by the court: "That the defendant, at the time of drawing said bill as aforesaid, had no reason to believe that R. S. Howland, the drawee therein named, would accept or pay the same, and defendant at said time well knew that said drawee had no funds in his hands due or owing to defendant."

The court also found that "the said bill was not

intended as an assignment of a portion of any fund what-
soever," but that "said bill was executed by defendant
in settlement of a liability to plaintiff theretofore in-
curred by defendant under a certain bond, and said
liability existed in full force as a cause of action in
plaintiff's behalf at the time of the execution of said bill
by defendant as aforesaid."

The judgment was for plaintiff, from which, and from
an order denying his motion for a new trial, the defend-
ant appeals.

The facts and circumstances pertinent to the questions
to be decided are substantially as follows:—

In February, 1881, one Tibbey chartered the plaintiff's
schooner for a sealing voyage in the Northern Pacific.
To secure the performance of the charter-party on the
part of Tibbey, and for his accommodation, the defendant
executed a bond to plaintiff in the penal sum of $6,250;
but the defendant was not interested in the charter-
party, nor in the sealing voyage. The schooner, after
fishing for a season, sailed to Yokohama, Japan, with
such cargo of skins as had been taken on the voyage,
and there got into trouble and litigation. When news
of her arrival in Yokohama, and of her trouble there, was
received in San Francisco, Tibbey, to secure indemnity
to the defendant for his liability on the bond to plaintiff,
assigned to him the cargo of skins. While matters were
in this condition, the plaintiff was demanding of defend-
ant payment of about three thousand one hundred dol-
lars, which he claimed to be due him on the charter-
party, and which Tibbey was unable to pay. Through
the intervention and assistance of R. S. Howland, acting
as the agent and adviser of plaintiff, a settlement was
effected between plaintiff and defendant, the terms of
which, as then executed, were: 1. That plaintiff's demand
was reduced to the sum of $2,019.70; 2. That defendant
turned over to Howland his security for indemnity (the
cargo of skins), to be disposed of and converted into

money by the latter; and 3. That defendant drew on Howland the bill of exchange in suit for the sum of plaintiff's reduced demand ($2,019.70). This settlement was made with the consent of Tibbey. At the time of this settlement it was believed by all the parties concerned that the money product of the cargo would be even more than sufficient to pay the bill; but it was well known by plaintiff and defendant, at the time the bill was drawn, that defendant had no funds in the hands of Howland, and it was quite as well understood that Howland was not expected to accept or pay the bill until he should receive money for that purpose from the sale of the cargo, nor to pay a greater sum than he should thus receive.

There appears to have been no agreement or understanding, however, that the bill should be wholly satisfied from the fund to be realized from the sale of the cargo, nor, in any event, by payment of less than the sum it called for. Howland, in his deposition, says: "It was understood that if sufficient funds came to me from the sale of that cargo it was to be paid to Cashman upon this instrument [the bill], to the amount named therein. . . . . Harrison had no reason to believe that I would accept or pay said bill before the money came." Again he says: "I don't remember any other instrument executed at that time for the purpose of portioning the fund that was expected to be realized from the sale of the cargo of said schooner, nor did I understand that this instrument was for such purpose. I understood that the legal title to said cargo of said schooner, immediately prior to the execution of the bill of exchange, was in Harrison. The legal title to the cargo was vested in Harrison by the Tibbeys by their assignment of the same to him, to secure him for the liability he had incurred in their behalf by his bond given to Cashman. Harrison gave Cashman this paper or instrument to settle his liability to Cashman on ac-

count of this very bond for the payment of the charter-
money."

The cargo of skins was finally sold in London, but
after paying expenses, including expenses of litigation
in Japan, Howland realized therefrom only six hundred
dollars, which was not received by him until some
time after May, 1883; and when it was received, the de-
fendant took it out of his hands, so that no part of it
was paid on the bill of exchange.

1. I think the bill was intended to be what it plainly
purports to be, an inland bill of exchange, and that the
finding, that it "was not intended as an assignment of
a portion of any fund whatsoever," is justified by the
evidence.

By turning over his indemnity security to Howland,
Harrison intended merely to provide funds, then sup-
posed to be sufficient, for the payment of the bill at such
future time as those funds were expected to come into
Howland's hands; thereby gaining time to realize upon
his own security for indemnity.  But the evidence fails
to show that plaintiff agreed to rely solely upon that se-
curity, or that the bill of exchange should not have the
legal effect of a bill of exchange.  The substance of the
transaction was, — 1. To settle and liquidate the amount
of defendant's liability on his bond; and 2. To ex-
change securities for the payment thereof.  The bill of
exchange was given to secure the payment of the sum
for which defendant was liable on his bond, thus liqui-
dated by the settlement.  Had it been the intention of
the parties that the bill was to operate only as an as-
signment of the fund to be realized from the cargo, and
that it was to be wholly satisfied from that fund alone,
it is difficult to conceive why, when the fund was re-
ceived by Howland, the defendant should have thought
himself entitled to demand and receive the whole of it,
or why Howland should have complied with the de-
mand.  The taking of the money proceeds of the cargo

out of the hands of Howland seems utterly inconsistent with the assignment theory, and can be rationally accounted for only upon the supposition that the defendant regarded the instrument as being what it purported to be; and so regarding it, concluded as matter of law that his liability upon it had been discharged by want of timely presentment of it to the drawee or notice of dishonor, and consequently that he was entitled to withdraw his funds from Howland.

The bill itself, before acceptance, has no tendency to prove the assignment, but the contrary. In *Harris* v. *Clark*, 3 N. Y. 118, 51 Am. Dec. 352, the court, by Ruggles, J., after reviewing the cases, said: "The principle appears to be firmly established that a bill of exchange does not of itself give to the holder, either at law or in equity, a lien upon the funds of the creditor in the hands of the debtor until after acceptance by the latter." To the same effect are *Mandeville* v. *Welch*, 5 Wheat. 286, and *Tiernan* v. *Jackson*, 5 Pet. 580.

In the well-considered case of *Attorney-General* v. *Continental Life Ins. Co.*, 71 N. Y. 325, 27 Am. Rep. 55, it was held that even a check upon a bank which has funds of the drawer does not operate as an assignment of the fund unless the check specify the particular fund upon which it is drawn; and a like decision was rendered in *Lunt* v. *Bank of North America*, 49 Barb. 221.

In *Marine and Fire Insurance Bank* v. *Jauncey*, 3 Sand. 257, it was insisted by counsel that a bill of exchange drawn against a consignment of cotton, but without specifying the fund, was itself an equitable assignment by the drawer of the cotton or its proceeds. To this the court answered: "This is certainly carrying the doctrine of equitable assignment very far, and is, in our judgment, entirely unsupported by authority. In the cases cited by counsel, and in all the other cases where an order has been held to be an equitable assignment of a particular fund, the fund has been specified in the order,

and the party giving the order has thereby divested himself of all right to control the fund purporting to be assigned. The form of the assignment is immaterial, but these two ingredients first named are essential. .... A bill of exchange, however, — and the instrument in question is nothing more nor less, — differs from such an order. It must be payable at all events, and not out of a particular fund. If its payment is contingent, either with regard to the event or the fund out of which it is to be made, it is not a bill of exchange, but an order or assignment of a fund. The converse of this is also true, that if the instrument be a bill of exchange, it is not an assignment of a fund."

2. Assuming, as we must, that the instrument is a bill of exchange payable immediately, as it purports to be, I think presentment thereof for acceptance or payment, and notice of dishonor, according to the general rule, were excused as to the defendant. Section 3220 of the Civil Code provides: "Presentment of a bill of exchange for acceptance or payment, and notice of dishoner, are excused as to the drawer, .... if, at the time of drawing, he had no reason to believe the drawee would accept or pay the same." (See also Daniel on Negotiable Instruments, secs. 1073, 1081; *Terry* v. *Parker*, 1 Nev. & P. 752; *Commercial Bank* v. *Hughes*, 17 Wend. 94.)

The finding of the trial court, that, at the time of drawing the bill, the defendant had no reason to believe that the drawee would accept or pay the same, is well supported by the evidence, and brings the case fairly within the code exception to the general rule requiring presentment for acceptance or payment, according to the tenor of the bill, and notice of dishonor.

To bring a case within this code exception, it is not necessary, as contended by counsel for appellant, to prove fraud on the part of the drawer of the bill. The exception is based on the mere fact that the drawer, at the time of drawing the bill, " had no reason to believe

the drawee would accept or pay the same "; and it is certainly possible that this fact may exist without fraud. It may be attributable to folly, or to a degree of negligence not at all evincive of fraud. Indeed, it is consistent with an ill-founded belief that the drawee would accept and pay the bill. (Daniel on Negotiable Instruments, sec. 1073.)

Except for the purpose of proving want of consideration, fraud, accident, or mistake, which might nullify the instrument, parol evidence is inadmissible to vary or contradict a bill of exchange. "Therefore, if a bill or note be absolute upon its face, no evidence of a verbal agreement made at the same time, qualifying its terms, can be admitted." If the bill is payable on demand, "it cannot be shown by verbal testimony that it was agreed that it should not be paid . . . . until the amount was collected from certain sources; nor until a certain draft was received; . . . . nor that a note (or bill) in which no time for payment is expressed, and is therefore constructively payable on demand, was to be paid at a specified time; . . . . nor that the liability of the drawer, maker, or other party was not to be enforced; . . . . nor that it was to be paid out of a particular estate." (Daniel on Negotiable Instruments, secs. 80, 81, and cases there cited.)

In this case there is no pretense of fraud on the part of the plaintiff or drawee, or that there was any accident or mistake affecting the express obligation of the drawee. The parol evidence introduced was admissible only for the purpose of proving the consideration or want of consideration for the bill, the timely presentment, demand, etc., or the excuse for not having made them. (Daniel on Negotiable Instruments, sec. 81 a.)

But conceding, for the sake of the argument merely, that the parol evidence was competent to prove, and that it did prove, that the bill was payable only when Howland, at some future time, should receive from Japan or England

the cash proceeds of the cargo of skins, yet, by withdraw-
ing from Howland the whole cash proceeds of the cargo
after they were received by him, the defendant committed
a fraud by which he forfeited the right to require de-
mand and notice. (Daniel on Negotiable Instruments,
sec. 1081.) Besides, he thereby precluded any possible
prejudice to himself by want of demand and notice.
Said Lord Denman, in *Terry* v. *Parker,* 1 Nev. & P. 752:
"The question is, whether want of effects in the hands
of the drawee excuses the holder of a bill of exchange
from the necessity of presenting the bill for payment,
as well as of giving notice of dishonor to the drawer.
Many cases establish that notice of dishonor need not
be given to the drawer in such a case, and the reason as-
signed is because he is in no respect prejudiced by want
of such notice, having no remedy against any other
party on the bill. This reason equally applies to want
of presentment for payment, since, if the bill was pre-
sented and paid by the drawee, the drawer would become
indebted to him in the amount, instead of being indebted
to the holder of the bill, and would be in no way bene-
fited by such presentment and payment." In *Commer-
cial Bank* v. *Hughes,* 17 Wend. 94, Cowen, J., said: "When
the drawer has plainly suffered nothing, and can sustain
no mischief for want of demand and notice, none need
be made or given." Had the plaintiff demanded and re-
ceived from Howland the full proceeds of the cargo, six
hundred dollars, that sum would have been credited on
the bill. Had defendant, after withdrawing the six hun-
dred dollars from Howland, paid it to plaintiff, the re-
sult would have been the same. Is defendant prejudiced
by his withdrawal and retention of the six hundred dol-
lars which should, and according to his theory would,
have been paid to plaintiff if demanded? The principle
upon which the exception to the general rule solely rests
is, that in the cases to which it applies, the drawer is in
no degree prejudiced by the failure of the holder to pro-

test the bill, and would not be benefited by demand and notice of dishonor. It thus appears that in no aspect of the case was the defendant prejudiced by want of presentment of the bill or notice of dishonor.

3. It is contended that the court erred in permitting plaintiff to introduce the bond of defendant to plaintiff as evidence in chief, against defendant's objection, on the grounds that it was "immaterial, irrelevant, and incompetent."

The bond was certainly competent, relevant, and material on the issue as to the consideration for the bill, raised by the answer, and insisted upon here. But it was at least irregular to introduce it in chief, since the bill was *prima facie* evidence of a sufficient consideration; but it was not objected to on the ground that it was offered out of the proper order, or that it could properly be offered only in rebuttal. That it became relevant in rebuttal there is no question; so that the error, if it was such, of admitting it out of the proper order was harmless.

I think the judgment and order should be affirmed.

TEMPLE, C., and BELCHER, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.

Hearing in Bank denied.