HOWELL, ORR & CO., v. THE BOYD MANUFACTURING COMPANY.

*Assignment of Claim—Acceptance of Draft by Surviving Partners—Endorsement of Draft.*

1. A surviving partner has no right to create or contract new debts binding upon the partnership, except to the extent of purchasing new material and making new debts so fár as may be necessary to work up unfinished material and sell the same.

2. A surviving partner of a firm, who was also Secretary of a Co., to which the former was indebted, accepted a time draft drawn by himself as Secretary of a Co., which endorsed it to plaintiff "for value" and "to pay a debt and close up an open account." In a similar draft drawn in renewal of the first, other indebtedness of a Co. to plaintiffs was included so that the new draft was for a larger amount than was due from the firm to a Co. *Held*, that the transaction was a valid assignment to plaintiffs of the claim of a Co. against the firm, and plaintiffs are entitled to recover of the firm so much of the draft as equalled the amount due from the firm to the Co. (CLARK, J., dissents, *arguendo*.)

This was an ACTION to recover the amount expressed in a certain draft as set out in the complaint, tried before *Graham, J.*, and a jury, at March Term, 1895, of MECK-LENBURG Superior Court. From the case on appeal tendered by plaintiffs and accepted by the defendant, the following facts are gathered:

In 1893, and prior to August 17, 1893, the defendants were engaged in partnership business under the name of the Boyd Manufacturing Company and the plaintiffs were engaged in partnership business also, and at the same time the Hermitage Cotton Mills were engaged in partnership business under that name and style. The Boyd Company was composed of A. J. Boyd, T. A. Richardson, S. H. Boyd and George D. Boyd. On August 17, 1893, A. J. Boyd died. S. H. Boyd was a member and the manager of the Boyd Company and was secretary and treasurer of the Hermitage Company. On August 17, 1893, the Boyd Company was indebted to the Hermitage Company on account in an amount about $5,500, and the Hermitage Company was indebted to the plaintiffs about the same amount. For this amount, S. H. Boyd, as treasurer and secretary of the Hermitage Company, on September 1, 1893, gave to the plaintiffs three drafts for said amount, drawn on the Boyd Co., of which he was a member and

manager, payable to the Hermitage Company and accepted
the drafts and endorsed them to the plaintiffs as secretary,
etc., of the Hermitage Company.   Two of the drafts have
been paid by the latter company.   The drafts were renewed
one or two times and the first, when renewed was for the
original $1,470.92, with some new transaction included,
amounting to $2,000, or more, on which was still due, when
this action commenced, $1,738.54 and some interest.   All
these drafts were payable at some future day, say 30, 60 or
90 days.

S. H. Boyd testified as plaintiff's witness, "This draft,
(the one sued on) was endorsed to the order of Howell,
Orr & Co. for value to pay a debt and close up an open
account due by Hermitage Cotton Mills to Howell, Orr &
Co., and the draft was given in part renewal of a former
draft."

Again he says that "Sanders (one of the plaintiffs) on
September 1, 1893, came to see me and brought a statement
of plaintiff's account against the Hermitage Co., so as to
get bankable paper for the account as the cotton season
would soon open and he wanted to get his account into
shape_____I did not accept the said drafts on account of the
said indebtedness to the Hermitage Mills though the Boyd
Co. was indebted to the Hermitage Co. at the time.   I
accepted the draft in order to give Sanders a paper he could
use on my own responsibility without consultation with any
others."

Sanders testified—"I had been trying to get him (S. H.
Boyd) to settle our account and he promised to settle in 30
days.   I told him we wanted our money, etc.   I took the
drafts."   The Boyd Co. did some new business but closed
up its business early in 1894."

There was judgment for the defendants and plaintiffs
appealed.

*Messrs. Burwell, Walker & Cansler,* for plaintiffs (appellants).

*Messrs. Maxwell & Keerans,* for defendants.

FAIRCLOTH, C. J. (after stating the facts) : At common law an assignment is the transferring and setting over to another of some right, title or interest in things in which a third party, not a party to the assignment, has a concern and interest. 1 Bac. Ab., 329. And the term implies the relation of debtor and creditor. By our Code all things in action arising out of contract are assignable.

Upon the death of A. J. Boyd the firm of the Boyd Company was dissolved and the survivors had no authority to create or contract new debts binding on the original company. It then became their duty to close out and wind up the firm business by collecting its assets and paying its debts and finally distributing the balance to the parties entitled to it. The survivors, however, have the right to purchase new material and make new debts so far as may be necessary to work up unfinished material and sell the same. This is for the benefit of the creditors and the estate itself, and this to some extent was done in this case. Now, what was the effect of the conduct of S. H. Boyd and the plaintiffs in the matter ? The Boyd Company was indebted by account to the Hermitage Company and the latter was indebted to the plaintiff by account, the former being dissolved by death, and the duty of settling its affairs devolved upon the survivors. The plaintiffs on September 1, 1893, applied to the Hermitage Company to have their account settled, stating that they wanted their money, and they received the drafts in question with a promise that they should be paid in 30 days, &c. S. H. Boyd says "The draft was endorsed to the plaintiffs 'for value'    *    *    It was endorsed to pay a debt and close up an open account due by Hermitage Company to

plaintiffs and the draft was given in part renewal of a former draft." Of these transactions the defendants had full notice on September 1, 1893, when the company was solvent and so far as appears is still solvent.

To this Court it appears that something more than accommodation paper was intended. The demand for payment of plaintiffs' account, the endorsement of draft "for value" and "to pay a debt and close up an open account" due the plaintiffs, certainly have a significant meaning, all of which was known to the defendants. Was it not a plain transferring and setting over of the account against the Boyd Company to the plaintiffs and thus paying a debt and closing up the account due by the Hermitage Company? It was simply using the account against the Boyd Company instead of money to pay the plaintiffs. The case is not similar to banking operations where promptness in daily transactions are required, where the bank pays out its deposits upon checks, drafts, &c., for they owe no debt to any one except the depositors and are not liable on such paper to any one until they have accepted it. Let it be admitted that S. H. Boyd had no authority after dissolution to accept drafts and assume new obligations for the Boyd Company, still he had authority as manager of the Hermitage Co. to use its paper and credits to discharge its debts. This is no affair of the defendants. They owed a debt and were in duty bound to pay it to whomsoever it might belong, and here they were served with notice of the true ownership.

It is suggested that as the drafts drawn were payable at a future day they were therefore new debts. Not so, because they were upon the original consideration, and that fact could not affect the defendants, because their debt was due and they had the privilege of paying it any day at will, regardless of a proffered indulgence by other parties. If the

holder had declined the defendants could have made a legal tender and deposit of the money and at once discharged their liability and stopped interest and cost. *Parker* v. *Beasley*, at this term.

We are of opinion that plaintiffs are entitled to recover $1,470.92 with interest and no more, because we cannot see certainly that any of the balance was a debt proper against the defendants at A. J. Boyd's death. His Honor's refusal to give plaintiff's prayer for instruction to the extent above indicated, was error, and this conclusion makes it unnecessary to consider other exceptions.

Reversed.

CLARK, J. (dissenting): The defendant, The Boyd Manufacturing Co., was not incorporated, but was a partnership, and was dissolved by the death of A. J. Boyd in August, 1893. Subsequently thereto, S. H. Boyd, Secretary and Treasurer of the Hermitage Cotton Mills and who was also a surviving partner in the firm known as The Boyd Manufacturing Co., drew a draft on the latter at 90 days, on May 3, 1894, in favor of the plaintiffs for $2,075.49 and attempted to accept the same himself as manager of The Boyd Manufacturing Co. At the time of the draft, The Boyd Manufacturing Co. was indebted to The Hermitage Cotton Mills in an amount considerably less than that. Before the draft fell due, the Hermitage Cotton Mills collected of the Boyd Manufacturing Co. the entire amount due. This is an action by the plaintiffs, in whose favor the draft was drawn, to collect it over again of the drawee, on the ground that it paid the Hermitage Cotton Mills in its own wrong.

S. H. Boyd, surviving partner, had no authority to accept the draft so as to bind The Boyd Manufacturing Co., as it had been dissolved. The attempted acceptance was a nul-

lity except as to S. H. Boyd individually, and against him a judgment has been entered up and not appealed from. The position of the plaintiffs therefore, as to The Boyd Manufacturing Company, is that of a holder of a draft not accepted, and the plaintiffs have by virtue of such paper no claim against the drawee. Their claim is valid of course against the drawer.

The plaintiffs claim however that they are assignees of the debt which the Hermitage Cotton Mills Company held against the Boyd Manufacturing Company, and therefore that the latter is still liable to them, notwithstanding it has paid the debt in full to the Hermitage Company.

The answer to this is that the witness of the plaintiffs, who is uncontradicted, testifies that in fact it was not an assignment and was not intended to be, but was merely " accommodation paper." Another witness for plaintiffs, L. W. Sanders, testifies, " We received these papers as the acceptances of the Hermitage Company and The Boyd Manufacturing Company and as *bankable* paper." It could not therefore have been an assignment of a claim. The evidence is uncontradicted that in point of fact there was no assignment of the debt, and the claim of the plaintiffs against The Boyd Manufacturing Company is simply that of the holder of an unaccepted draft, since the attempted acceptance by an unauthorized surviving partner is a nullity. *Kahnweiler* v. *Anderson*, 78 N. C., 133.

It is contended, however, that such paper may be treated as an assignment of the debt, though not so intended between the parties at the time. The question is a very important one, affecting materially the course of dealings in commercial paper, and the following principle seems well settled. To make an order operate as an assignment, it must be upon a particular fund; it is not enough that it is drawn upon a debtor. 83 Me., 242, and numerous

cases and other authorities there cited.   See also 90 Cal., 297, and 21 Am. St. Reports, 456.

Besides an unaccepted draft or check is never held to be a claim against the drawee in the nature of an assignment of the debt, unless it was due at the time when presented and the drawee at that time had funds in his hands due the drawer.   This has twice been recently held by this Court, *Marriner* v. *Lumber Co.*, 113 N. C., 52; *Hawes* v. *Blackwell*, 107 N. C., 196; *Bank* v. *Shuler*, 120 U. S., 511. When this paper fell due, the drawee had no funds in hand due the drawer, and was not indebted to it, having paid to it, or on its sight drafts, the full amount due.   It is true there had been a former draft on the Boyd Manufacturing Company in favor of the plaintiffs, but the plaintiffs had taken in its stead a new draft at ninety days.  ·This was notice to the Boyd Manufacturing Company that the plaintiffs held no claim against it which could be presented till the end of ninety days, and it could not till the maturity and presentation of the check lock up the drawer's debt, and refuse to pay the drawer or its sight drafts the amount due, unless it had accepted the drawer's time draft, which it was disabled in law to do.   It is this which distinguishes this case from *Brem* v. *Covington*, 104 N. C., 589.   The ninety days draft, unaccepted, was not a lien on the funds of the drawer in the hands of the drawee, but was simply a request to the Boyd Manufacturing Co. to pay the plaintiffs $2,075.29 at the end of that time, and this (in the absence of the uncontradicted evidence that it was not an assignment at all) would have been an assignment of whatever funds the drawer had in the hands of the drawee at the maturity of the draft.   The plaintiffs doubtless would ·not have taken such paper, but it is certain that it was relying, not upon an assignment, but upon the acceptance of the Boyd Manufacturing Company, which, unfortunately

for it, was a nullity. The claim that it is an assignment is a second thought, which was only conceived when the *bankable* paper, the plaintiffs thought they were taking, proved worthless as to the drawee, because of the invalidity of an acceptance by a member of an extinct partnership to bind it. Even if it had been an assignment, by the terms of the paper itself and on its face, it was an assignment which (in the absence of an acceptance) was not to take effect till ninety days from May 3, at which time there was no debt due the Hermitage Company on which it could take effect. Though the drawee had notice of the assignment, it had notice too that it was not payable for ninety days, and in the meantime it had notice also of drafts payable at sight, or by the creditor's own demand, which it could not refuse to pay. It could not pay both, and not having accepted the time draft, it had no ground to refuse payment of the sight drafts. Wherein is the advantage or effect of the acceptance of a time draft if mere notice of it to the drawee, without acceptance by him, is a lien on the funds of the drawer in the hands of the drawee so that the latter can not, except at his own peril (as in this case) pay the drawer himself or his sight drafts prior to the date when the unaccepted draft shall fall due.