[S. F. No. 2287.   Department One.—December 29, 1902.]

## DONOHOE-KELLY BANKING COMPANY, Respondent, v. SOUTHERN PACIFIC COMPANY, and JOHN H. SHINE, United States Marshal, Appellants; and CHARLES G. WILLEY, Respondent.

Checks—Assignment—Garnishment.—The delivery of an ordinary check upon a bank for part of the fund standing therein to the credit of the drawer, does not, prior to its presentation, operate as an assignment of the fund *pro tanto,* and a garnishment of the fund under execution as belonging to the drawer will prevail over all unpresented and unaccepted checks previously drawn thereupon.

Id.—Execution—Identity of Person—Name Differently Spelled—Idem Sonans—Finding.—The name Welch seems to be *idem sonans* with Welsh; and where the given name and middle initial are the same, and the court finds that the same person was intended by each spelling, the identity of the person is clearly established, and there is no variance in the name which is fatal to the writ of execution.

Id.—Garnishment under Judgment for Defendant.—A defendant in whose favor judgment has been rendered has the same right of garnishment under execution against the plaintiff which a plaintiff has under an attachment, or under a judgment and execution against the defendant.

Id.—Notice of Garnishment—Name of Bank.—A notice of garnishment served upon the "Donohoe-Kelly Company," instead of the "Donohoe-Kelly Banking Company," is not void when there is no pretense that it was not served on the right party owing the debt, and it appears that the levy was made as required by law, and no question is made that the corporation intended to be reached was the "Donohoe-Kelly Banking Company."

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion.

J. E. Foulds, for Appellants.

P. G. Galpin, and Crandall & Bull, for Respondent.

CHIPMAN, C.—Plaintiff brought the action to compel the claimants to interplead and litigate among themselves the right to $336.43, which was on deposit with plaintiff in the name of John O. Welsh, on October 22, 1898. It appears that on that day Welsh drew a check on plaintiff bank in favor of Virgin & Co., Ashland, Or., for $37 and mailed it to the payee. On October 22, 1898, he drew two other checks on plaintiff, one for $125, in favor of J. J. Sheafor, and one for $200 in favor of J. W. Parker. The Sheafor check was delivered to Sheafor a day or two after it was drawn. The third check, for $200, was not delivered until after October 27, 1898. In an action pending in the United States circuit court, wherein John O. Welsh was plaintiff and Southern Pacific Company was defendant, the latter obtained judgment against Welsh for $1,150.12. On October 24, 1898, said Southern Pacific Company caused a writ of execution to issue out of said circuit court, but in the title of the case in such writ the name of plaintiff therein was spelled Welch instead of Welsh. The writ was served on plaintiff herein by defendant Shine, United States marshal, on October 27, 1898, by notice of garnishment. After the service of garnishment these several checks were presented for payment, and payment was refused. Thereafter they were assigned to defendant Willey, who is now the holder. In the pleadings in the present case the name Welsh was again misspelled and he was referred to as Welch. The trial court found that the defendant referred to as John O. Welch in plaintiff's complaint and in the cross-complaint of the Southern Pacific Company and Marshal Shine is the same person referred to as John O. Welsh, plaintiff in the said action in the United States circuit court and in the said writ of execution, and is the same person who on October 22, 1898, had on deposit with plaintiff, in the name of John O. Welsh, the said sum of $356.43, which was

still so on deposit on October 27, 1898, when garnishment was served upon plaintiff and as alleged in the cross-complaint. Upon these facts the trial court decided that the checks to Virgin & Co. and J. J. Sheafor ($37 and $125) should be paid to the holder. As to the $200 check, which was not delivered until after service of the garnishment, the court held that the holder was not entitled to payment. Judgment was accordingly rendered in favor of Willey for $162, and the balance of the funds, after deducting the costs of the action, were ordered paid to the marshal for the Southern Pacific Company. Defendants the Southern Pacific Company and Shine appeal from the judgment on bill of exceptions.

1. A bank-check is a bill of exchange. (Civ. Code, sec. 3254.) The statute provides that ''All persons having in their possession or under their control any credits or other personal property belonging to the defendant, or owing any debts to the defendant, at the time of service upon them of a copy of the writ and notice, as provided in the last two sections, shall be . . . liable to the plaintiff for the amount of such credits,'' etc. (Code Civ. Proc., sec. 544.) It is obvious that unless the Virgin & Co. and the Sheafor checks had the effect to assign or transfer the deposit *pro tanto* to the payees at the date of their delivery (which was prior to the garnishment) the amount on deposit with the bank to the credit of Welsh was a credit belonging to Welsh, or, in other words, was a debt owing to him by the bank, when it was summoned as garnishee. The assignment, if such it was, must have changed the title to the credit from Welsh to the payees and made it their property. The contention of respondent is, that such was the effect of the checks, and that they worked an equitable assignment *pro tanto;* that the attaching creditor can only acquire such rights to the property attached as the debtor had at the time the attachment was served; and as the debtor's authority over the fund ceased after he had given checks for its withdrawal, the creditor gets nothing by his attachment. In support of his contention respondent cites *Hassie* v. *God Is With Us Cong.,* 35 Cal. 378; *Grain* v. *Aldrich,* 28 Cal. 514; [1] *Redondo B. Co.* v. *California etc. Co.,*

[1] 99 Am. Dec. 423.

101 Cal. 322; *Oppenheimer* v. *First Nat. Bank,* 20 Mont. 192; *Schuler* v. *Israel,* 120 U. S. 506; *Horne* v. *Stevens,* 79 Me. 262; *Dillman* v. *Carlin,* 105 Wis. 14; [1] *Skobis* v. *Ferge,* 102 Wis. 122; *Fonner* v. *Smith,* 31 Neb. 107; [2] *Pease* v. *Landauer,* 63 Wis. 20; [3] Rood on Garnishment, sec. 71, and cases in note 101; *Bank of America* v. *Indiana Banking Co.,* 114 Ill. 484, and two other Illinois cases there cited. We have examined these authorities with some care, but, with the exception of the Illinois cases, they do not support the position of respondent. In the Illinois cases cited, following previous decisions of that court, it was held that when a depositor draws a check on his banker, who has funds of the depositor to an equal or greater amount, it operates to transfer the sum named in the check to the payee, who might sue for and recover the same from the depositary; that a transfer of the check carries with it the title to the amount named in the check to each successive holder, and that it is not in the power of the drawer to countermand the order of payment. "The drawing of the checks . . . operated precisely as if the money had, in fact, been drawn out of the bank before the issuing and service of the process of garnishment. . . . The legal effect of drawing these two checks was the reduction or drawing out of the bank the amounts therein specified, and lessens the fund to that extent that was subject to attachment, although not presented for payment until after the process was served on the garnishee."

In section 71 of Rood on Garnishment, cited by respondent, some of the cases on both sides of the question are given in the notes. But in section 72 the author states: "It is believed that, with the above exceptions, the holder of a mere order upon the garnished fund has no claim to it which he can maintain against a garnishment served between the giving of such order and its acceptance by the drawee," (citing *Poole* v. *Carhart.* 71 Iowa, 37; *Holbrook* v. *Payne,* 151 Mass. 383; [4] *Hobson* v. *Kelly,* 87 Mich. 187; *Baer* v. *English,* 84 Ga. 403; [5] *Jones* v. *Glover,* 93 Ga. 484). It has been suggested that the decisions of this court sustain the position of respondent. A review of them will, perhaps, not be without value.

[1] 76 Am. St. Rep. 902.       [4] 21 Am. St. Rep. 456.
[2] 28 Am. St. Rep. 510.       [5] 20 Am. St. Rep. 372.
[3] 53 Am. Rep. 247.

In *McEwen* v. *Johnson*, 7 Cal. 258, the *syllabus* is, that "An order drawn by a creditor on his debtor is *prima facie* evidence of an assignment of the debt *pro tanto*, and if accepted will bind the parties." The order was by one North to "pay Samuel Soule eleven hundred dollars out of my wages, earnt building a steamboat for you on the Colorado River the past five months." It was directed to B. M. Hartshorne, and was accepted by Hartshorne as follows: "I accept this order when in funds," and the evidence showed that defendants had accepted North's order before plaintiff's attachment was served on North's creditors. The facts in the case do not sustain the rule enunciated in the *syllabus*.

*Wheatley* v. *Strobe*, 12 Cal. 92,[1] is frequently quoted by authors and judges, and sometimes on both sides of the question. The order read: "Mr. Strobe: Please pay the bearer of these lines two hundred and thirty-six dollars, and charge the same to my account." Signed E. D. Wheatley. Strobe was indebted to Wheatley, Wheatley to Howell, and Howell to Wilcoxson & Co. It was to pay his debt that Wheatley gave the order on Strobe to Howell. The order was presented to Strobe on July 25th and accepted verbally. Soon afterwards Wilcoxson & Co., judgment creditors of Howell, garnished the debt, if any, due by Strobe to Howell, by virtue of this order. Subsequently Wheatley commenced the suit against Strobe to recover the original debt. Strobe admitted the indebtedness, but set up the order, his verbal acceptance, and the garnishment of Wilcoxson & Co., and asked that the latter be made parties, and he be allowed to pay the amount into court. Wilcoxson & Co. intervened, setting up the same facts, and also the fact that the order was given for a debt due by Wheatley to Howell and claiming under their garnishment. A demurrer was sustained in the lower court to Strobe's answer, and the petition of intervention was denied. Defendant appealed. Field, J., delivered the opinion. It was held that the order was a bill of exchange, and the *written acceptance* of Strobe was necessary to charge him as acceptor under the statute. He was therefore held not liable on the order. But it was also held that the order, though not available as a bill of exchange against Strobe, for want of acceptance, operated as an equitable assignment of the demand of

[1] 73 Am. Dec. 522.

Wheatley to Howell. The reason given for this is thus stated: "It [the order] was given for an antecedent debt, and for the full amount of the demand against Strobe. The consideration was valuable, and there was no splitting of the amount due into distinct and different causes of action; and in such cases it is well settled that an order, whether accepted or not, operates as an assignment of the debt or fund against which it is drawn. . . . After the delivery and presentation of the order, the debt due by Strobe could not be reached on attachment issued by the creditors of Wheatley"; and this because, as was said, "Courts of law, equally with courts of equity (under our system) gave effect to assignments like the one under consideration, by controlling the proceeds of the judgments recovered for the benefit of the assignee," (citing cases).

*Pierce* v. *Robinson*, 13 Cal. 116, decided nothing further than that an order to pay a debt out of a particular fund belonging to the debtor constituted an equitable assignment of the fund *pro tanto*. Field, J., said: "The agreement, under the circumstances of the case, must be deemed to have operated as an equitable assignment of the surplus, so soon as it existed, for the benefit of the laborers."

In *Pope* v. *Huth*, 14 Cal. 404, the court said: "We think it not important to consider whether this order is technically a bill of exchange. But we regard it as an equitable assignment of the funds in the hands of Huth & Co., to the payee; and Huth & Co. having notice of this assignment, would be liable to them for the amount, even in absence of an express promise to pay it." The court, however, found that there was an implied promise of the drawees to pay.

*Grain* v. *Aldrich*, 38 Cal. 514,[1] decided that an assignment of part of an entire demand is void *at law*, unless done with the consent of the debtor; but such an assignment is valid *in equity*, without the consent of the debtor, where the assignor is made a party, with a prayer for an account and apportionment of the debt due from the defendants. The case assumes an assignment, and the question now here was not decided.

*Hobart* v. *Tyrrell*, 68 Cal. 12, decided only that an order drawn by creditors on their debtor, and accepted by the latter,

[1] 99 Am. Dec. 423.

operates as an assignment of so much of the debt as is represented by the orders.

*Cashman* v. *Harrison*, 90 Cal. 297, was an action by the payee against the drawer of a bill of exchange. In the course of the opinion the court said: "The bill itself, before acceptance, has no tendency to prove an assignment, but the contrary," (citing cases). Quoting from a New York case it was further said: "The principle appears to be firmly established that a bill of exchange does not of itself give to the holder, either at law or in equity, a lien upon the funds of the creditor in the hands of the debtor until after acceptance by the latter." Other cases to like effect are cited.

In *Lawrence Nat. Bank* v. *Kowalsky*, 105 Cal. 43, the court held that "an equitable assignment of a specific demand or particular indebtedness may be effected by means of an instrument having the form of an order or bill of exchange drawn by the creditor upon the debtor for its full amount, *when such is the intention of the drawer and payee*," (citing *Wheatley* v. *Strobe*, 12 Cal. 92,[1] and adding that *Cashman* v. *Harrison* was not intended to overrule the latter case).

In the case of *Curtner* v. *Lyndon*, 128 Cal. 35, the lower court had found as matter of fact that the order had the effect of an assignment, and this court on appeal said: "We will not set aside that construction." The fund was claimed under an attachment levied after the order had been presented to the debtor holding the fund. Nothing in the case warrants the belief that the court intended to give support to the doctrine contended for by respondent.

So in *McIntyre* v. *Hauser*, 131 Cal. 11, the court held that the transaction, such as it was, constituted an equitable assignment, and it was in view of the facts that the court said: "It is elementary that an assignment of a chose in action takes precedence over a subsequent garnishment," (citing *Walling* v. *Miller*, 15 Cal. 38; and as to such particular facts as would constitute an equitable assignment, reference is made to *Pope* v. *Huth*, 14 Cal. 404).

These are the only cases we have found which bear upon the question now before us, and they seem to me to leave the precise point at least *res integra*, but with a tendency towards the contention of appellants.

[1] 73 Am. Dec. 522.

Turning to the view of the question presented by appellants, we find the cases quite numerous holding that an order, check, or bill of exchange drawn for part of a fund, does not operate as an assignment of that part or give a lien as against the drawee, unless he consent to the appropriation by an acceptance of the draft. We are not concerned with those cases holding that a check or bill of exchange may be treated as an equitable assignment *pro tanto* where the drawer and payee intended the check to have such effect; nor with those cases dealing with checks drawn against a special fund; nor with cases where the order or check is for the precise balance due from the depositary, from which an inference may be drawn that an assignment was intended; nor with the question whether the payee may, in his own name, have an action on the check against the drawee with or without presentation and refusal to pay; nor whether he must look to the drawer; or if he sue, that he must sue in the drawer's name for the use of the payee. Much learning has been expended on these questions, and while they may have more or less bearing, *arguendo* of the question here, it seems to us that unless we can hold the check to be an assignment, legal or equitable, *pro tanto* we must hold that the garnishment takes precedence.

It was held by the supreme court of the United States in *Fourth Street Bank* v. *Yardley*, 165 U. S. 634, to be settled law that a check drawn in the ordinary form does not, as between the maker and the payee, constitute an equitable assignment *pro tanto* of an indebtedness owing by the bank upon which the check has been drawn, and that the mere giving and receipt of the check does not entitle the holder to priority over general creditors in a fund received from such bank by an assignee under a general assignment made by the debtor for the benefit of his creditors. It was also held as the settled doctrine of that court that the owner of a chose in action in the custody of another may assign a part of such right, and an assignment of this nature will be enforced in equity. Some, but by no means all, of the cases decided by English courts and by state appellate courts, supporting this view, are cited and reviewed. In *First National Bank* v. *Dubuque etc. R. R. Co.*, 52 Iowa, 387,[1] it was held that a bill

[1] 35 Am. Rep. 280.

of exchange drawn upon a general fund, and not accepted by the drawee, does not operate as an assignment of the fund, but is evidence to be considered with other circumstances in determining the intention of the parties.   In *Harrison* v. *Wright,* 100 Ind. 515,[1] a similar ruling was made.   The court there said (p. 538) "that a check in the ordinary form upon the drawer's banker, without words of transfer, and drawn upon no particular designated fund, does not operate as an appropriation or equitable assignment of a fund in the hands of the drawee, nor does it operate as an assignment of a part of the drawer's chose in action against the drawee."   Among other reasons given for this conclusion, the court said: "In the absence of evidence to the contrary, or a showing of an intention to assign a part of a fund in the hands of a drawee, . . . it should be presumed that the payee or holder of a check takes it upon the credit of the drawer, of whom he may collect, if payment be refused by the drawee."   Among the cases cited in support of the doctrine of the Yardley case, are *Covert* v. *Rhodes,* 48 Ohio St. 66, and *Hopkinson* v. *Forster,* L. R. 19 Eq. 74, where it was said by the master of the rolls: "You can have no charge in equity without an intent to charge." (*Shand* v. *Du Boisson,* L. R. 18 Eq. 283; *Thompson* v. *Simpson,* L. R. 5 Ch. 659; *Citizens' Bank* v. *First National Bank of New Orleans,* L. R. 6 H. L. 352.)

It was held in *Bullard* v. *Randall,* 1 Gray, 605,[2] that a check for a part of the drawer's funds in a bank constitutes no assignment of that part of such funds, until presented for payment and accepted by the bank, although verbally assented to by the cashier when absent from the bank; and in that case the bank, summoned as trustee of Randall, was compelled to account to Randall as between him and the payee of the check.   In *Sands* v. *Matthews,* 27 Ala. 399, it was held that the drawee of a bill of exchange before acceptance was liable to garnishment.   (See, also, *National Com. Bank* v. *Miller & Co.,* 77 Ala. 168,[3] and *Mayer* v. *Chattahoochee Bank,* 51 Ga. 325.)   In *O'Connor* v. *Mechanics' Bank,* 124 N. Y. 324, it was decided that an ordinary uncertified check upon a general bank account is neither a legal nor an equitable assignment of any part of the sum standing to the

---

[1] 58 Am. Rep. 805.          [3] 54 Am. Rep. 50.
[2] 61 Am. Dec. 433.

credit of the depositor, and confers no right upon the payee which he can enforce against the bank; and further, that such a check is simply an order which may be countermanded and payment forbidden by the drawer at any time before it is actually cashed. In this case the proceedings were at law by a receiver, appointed supplementary to execution, to recover a sum of money deposited with defendant, and alleged to belong to the judgment debtor. The principle already stated, as to the effect of a check, was reaffirmed on the authority of the courts of that and other states, and the cases were quite fully reviewed. In *Duncan* v. *Berlin,* 60 N. Y. 151, it was held that where the balance due a depositor in a bank is levied on by virtue of an attachment against the depositor, the bank is not authorized to deduct an outstanding check given by the depositor to a third person which had not prior to the levy of attachment been presented and accepted. In treating the question, Church, C. J., said: "A check upon a bank does not operate as an assignment of the money deposited, specified in it. . . . The drawee owes no duty to the holder until the check is presented and accepted." In *Loyd* v. *McCaffrey,* 46 Pa. St. 410, Strong, J., said: "It cannot be maintained that Taylor's check in favor of Wilson, without more, amounted to an equitable appropriation of the funds in the hands of the bankers to whom the check was addressed. To make an order or draft an equitable assignment, it must designate the fund upon which it is drawn, [citing cases]. It was payable out of any fund the drawer might have had in the hands of Loyd & Blandy, at the time of presentation. And it was not completed until the attachment was laid." The question was very fully considered in *Jones* v. *Pacific Wood etc. Co.,* 13 Nev. 359,[1] Leonard, J., delivering the opinion; and the conclusion was reached that an order in the form of an inland bill of exchange, not upon any particular fund, is not, before an acceptance, an assignment, and does not create any lien in favor of the holder upon funds of the drawer in the hands of the drawee. Similar decisions might be multiplied. Mr. Drake devotes much space to the question He says: "It is not, however, every order which may be drawn on a party having moneys of, or indebted to, the

---

[1] 39 Am. Rep. 308.

drawer which will operate an assignment of the money or debt. A bill of exchange, for instance, is not an assignment of the fund on which it is drawn, or any part thereof, until accepted by the drawee. . . . It is well settled that where an order is drawn on either a general or a particular fund, *for a part only,* it does not amount to an assignment of that part, unless the drawee consent to the appropriation by an acceptance of the draft; or an obligation to accept may be fairly implied from the custom of trade, or the course of business between the parties as a part of the contract.'' (Drake on Attachment, sec. 611. See, also, Randolph on Commercial Paper, secs. 589, 644, 1664.) He says: ''The weight of authority, both in England and in the United States, . . . holds that a check is not an assignment of the fund drawn against, and will not, before acceptance, implied or express, support an action by the holder against the bank.'' (Sec. 644.)

Without pursuing the inquiry further, we conclude, guided by principle as well as by weight of authority, that the court erred in directing the bank to pay the Virgin & Co. and Sheafor checks to the holder.

2. Respondent makes the point that the variance in the name of Welsh is fatal to the writ (citing Rood on Garnishment, sec. 266, and Freeman on Executions, sec. 42). The finding of the court clearly established the identity of the person named, and the rule *idem sonans* would seem to apply. (See *Galliano* v. *Kilfoy,* 94 Cal. 86; *People* v. *Fick,* 89 Cal. 144; *People* v. *James,* 110 Cal. 155.)

3. It is also contended that no authority is given the United States marshal to serve execution under United States laws by way of attaching debts due or owing to the *plaintiff* in an action in the United States courts. It is said that here a *defendant* in an action where he has obtained judgment seeks to attach a debt due to the *plaintiff* in such suit, and it is claimed that the attachment law of the state is made for the benefit of the plaintiff who brings the action and not for the benefit of the defendant in the action. There is nothing in the point. ''The party in whose favor a judgment is given, may . . . have a writ of execution,'' etc. (Code Civ. Proc., sec. 681), ''and the goods, chattels, moneys,'' etc., of the

judgment debtor "may be seized and held under attachment," etc.  (Code Civ. Proc., secs. 544, 688.)

4. The notice of garnishment was addressed to the Donohoe-Kelly Company, instead of the Donohoe-Kelly Banking Company, and it is claimed that for this reason the notice is void. There is no pretense that the notice was not served on the right party,—i. e. "the person owing such debts," (Code Civ. Proc., sec. 542, subd. 5),—and the levy was made as required by law.  (Code Civ. Proc., sec. 681 et seq.)  No question is made that the corporation intended to be reached was the Donohoe-Kelly Banking Company.  (Civ. Code, sec. 357.) The point is not well taken.

On the facts as found, judgment should have been as prayed for in the cross-complaint of Southern Pacific Company and John H. Shine, United States marshal, and it is recommended that the judgment as entered be modified so as to conform to this opinion.  The costs of appeal should be taxed against defendant Willey.

Haynes, C.; and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment is modified, with directions to enter judgment in accordance with the prayer of the cross-complaint and as in the opinion suggested.            Van Dyke, J., Harrison, J., Garoutte, J.