[Civ. No. 3170. Fourth Dist. Mar. 19, 1946.]

M. FRIIS-HANSEN, Appellant, v. REYNOLD THOMPSON, as Administrator etc., Respondent.

L. Kenneth Say for Appellant.

Wild, Carlson & Reeve and A. D. Christensen for Respondent.

GRIFFIN, J.—Plaintiff, M. Friis-Hansen, on August 1, 1933, in writing, leased service station property in Fresno from Helen P. Thompson (hereinafter referred to as defendant) for a period of five years. He paid as advance rental $2,000, which sum was to apply on any rental which might become due in excess of $100 per month. On November 15, 1936, plaintiff was evicted because of the sale of the real property under a trust deed.

The pleadings admit the receipt of the $2,000 and that plaintiff was in arrears in rent in the sum of $59.26 when he was evicted. This action was for the return of the difference, i. e., $1,940.74.

Defendant owned the equipment at the service station and, together with one Schuler, executed a chattel mortgage thereon. It was given as security, or as a guarantee to plaintiff of repayment to him for any losses that he might sustain by reason of having guaranteed the account of Schuler with the General Petroleum Corporation. Schuler was a tenant of plaintiff on the oil station premises. On October 2, 1934, defendant, due to the fact that he was losing money under the $100 per month rental required, by letter, allowed plaintiff three months' rental for each $200 paid on the lease.

Reynold Thompson, son of the defendant and admittedly her agent in the transaction, testified that plaintiff, in the fall of 1937, in the presence of a Mr. Brown, talked to him and asked about the money still owing plaintiff on the advance under the lease; that he (Thompson) said that he would turn over all of the service station equipment to plaintiff "in return for a settlement in full of any monies that might be owed to him in any connection with the deal, by my mother or myself or any one of us connected with it"; that they "made a settlement that way . . . that Mr. Hansen was to take all of

the equipment, covered by the mortgage, and also the equipment that was not covered by the mortgage, such as rest-room facilities, hoses, greasing equipment, floodlights, plumbing and pipes, in settlement in full for any money they might owe him.

On October 26, 1937, defendant wrote plaintiff a letter giving him "permission to take possession of the personal property included in the mortgage" for the purpose of enforcing the terms of the chattel mortgage. On the same day a bill of sale was drawn by Mr. Hansen and on November 22, 1937, it was signed by defendant Mrs. Thompson. The bill of sale recites: "In consideration of the sum of Six Hundred Fifty and No/100 Dollars to her in hand paid by M. Friis-Hansen" defendant sells certain described personal property (service station equipment) to Hansen. Admittedly, the $650 was never paid to her.

Thompson further testified that all the equipment described in the mortgage was turned over to Hansen "and more too"; that on one occasion prior to October 6, 1937, he had a prospect for the sale of part of the service station equipment but that Hansen would not release it; that the $650 mentioned in the bill of sale was just an amount they agreed upon in settlement of all claims; that the value of the property described in the chattel mortgage was "not less than $2500." Later, plaintiff sold one tank for $400. Many other tanks, pumps, and a 12 by 36-foot steel building were included as part of the personal property mentioned therein.

Mr. Brown testified that he was present on one occasion when the son of defendant and Mr. Hansen were discussing the disposition of the service station equipment; that he did not remember the entire conversation but did remember Thompson saying "Friis was getting a lot more than he felt he should have got"; that soon thereafter Hansen took possession of the equipment and moved it away. Hansen "didn't remember" any such conversation or agreement but did testify that Mr. Thompson claimed to have a buyer for the equipment for $700 or $750 and that to save foreclosure sale expenses he agreed to sell it for him and to retain all over $650; that the price of $650 was its market value and it was the amount of consideration that was to be recited in the bill of sale, and credit was to be given defendant for that amount which would leave a balance due plaintiff in the sum of $1,290.74. When the bill of sale was produced in court show-

ing that there was a consideration of $650 recited therein, counsel for plaintiff moved to amend his complaint seeking a balance of $1,290.74 instead of $1,940.74, allowing defendant credit for that amount.

The case was not tried until February 21, 1944, over seven years after the execution of the bill of sale. The witnesses had difficulty in trying to remember the substance of the several conversations or transactions. The trial judge exercised considerable patience with the parties in an endeavor to learn the true facts. He found that defendant held the $2,000 paid by plaintiff under the lease subject to a credit of $59.26 for unpaid rent; that defendant was the owner of certain described personal property which was subject to the chattel mortgage and that in "1938" plaintiff agreed to and did receive and accept such property from defendant in full and complete satisfaction of any claim set up in plaintiff's complaint and of all her liability or indebtedness to plaintiff. Judgment was entered for defendant accordingly. Plaintiff appealed.

Since the appeal was perfected defendant died and Reynold Thompson has been appointed administrator for her estate and substituted as party defendant in her stead.

It is plaintiff's argument on appeal that the court erred in holding that plaintiff accepted the personal property described in the bill of sale as an accord and satisfaction for the indebtedness found due under the lease. ■ The main argument is that the bill of sale specifies a consideration of $650 and that therefore parol or extrinsic evidence cannot be admitted to show actual consideration for the written agreement to be something other than the consideration recited therein, citing *Arnold* v. *Arnold*, 137 Cal. 291 [70 P. 23]. We see no merit to this argument. Section 1962, subdivision 2 of the Code of Civil Procedure provides that the following presumptions are deemed conclusive: "The truth of the facts recited, from the recital in a written instrument between the parties thereto, or their successors in interest by a subsequent title; but this rule does not apply to the recital of a consideration." See, also, *Wurdeman* v. *Waller*, 88 Cal. App. 393 [263 P. 558]; *Hendrick* v. *Crowley*, 31 Cal. 471. In the latter case it was held that the consideration of a written instrument cannot be contradicted or shown to be different by parol testimony, *when thereby the legal effect of the instrument to pass the entire interest, according to the pur-*

*pose therein designated, would be defeated.* This same principle was enunciated in *Arnold* v. *Arnold, supra,* cited by plaintiff. In the instant case the legal effect of the instrument was not thereby varied nor defeated. Title to the property passed to plaintiff in accordance with the purpose therein designated.

It is next argued that in order to support the finding on the theory of accord and satisfaction it becomes necessary to disregard all of the testimony on that phase of the case save and except the testimony of Reynold Thompson; and that the trial court totally disregarded the testimony of plaintiff's witnesses.

There are conflicts in some of the testimony. The trial court evidently believed the evidence produced by defendant. The finding that there had been an accord and satisfaction, although based upon conflicting testimony, has substantial evidentiary support. (Civ. Code, §§ 1521, 1523.) Under familiar rules, such finding may not be disturbed on appeal. (*Wurdeman* v. *Waller, supra.*)

Without objection, both plaintiff and Reynold Thompson testified as to the value of the articles specified in the bill of sale. Thereafter, other evidence was produced, over objection, substantiating this testimony as to value. The trial court admitted it "only in so far as it had an indirect bearing in attempting to determine the probability of what was said the night the agreement was purported to have been made respecting the accord and satisfaction." No prejudicial error resulted from this ruling, particularly after both parties, without objection, had previously testified on the subject. (*Cashman* v. *Harrison,* 90 Cal. 297 [27 P. 283]; *Williams* v. *Hawley,* 144 Cal. 97, 102 [77 P. 762]; 10 Cal.Jur. p. 932, § 199.)

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.