[Civ. No. 7480. Third Dist. Aug. 2, 1948.]

J. W. HOLBROOK, Appellant, v. D. C. SMITH, as Administrator, etc., Respondent.

Burke & Rawles and A. G. Lyon for Appellant.

Mannon & Brazier for Respondent.

ADAMS, P. J.—On March 2, 1945, Albert H. Joslin entered into a contract to sell to S. E. Satchwell, et al., certain real and personal property for $5,600. A cash payment of $1,500 was made, and the balance, together with interest, was to be paid at the rate of $35 per month. These monthly payments were made for a time, same being paid to the Bank of Willits and by the latter to Joslin.

On September 19, 1946, the purchasers having made arrangements with the bank to borrow a sufficient amount to pay the balance due on the contract, the bank wrote to the title company handling the transaction, enclosing a deed from Joslin to the Satchwells and a deed of trust from the Satchwells to the bank, with instructions to bring the title up to date, and if the property was free of encumbrances, to record the instruments. Later that month, the title company having found defects in the descriptions in the deeds, new deeds were prepared, and on September 28, 1946, Joslin wrote a letter to the bank enclosing a new deed to the Satchwells, and authorizing the bank to deliver same "when you have for my account the sum of $3360.00." This letter also instructed the bank to "make Cashiers check for $3360.00 less costs and mail to me on Satchwell transaction." On October 17, 1946, Joslin went to the bank and signed and delivered to Leta L. Noonan, an employee thereof, a writing as follows: "Oct. 17, 1946 Make check to J. W. Holbrook $3000.00." Said instrument was never accepted by the bank in writing as required by Civil Code, section 3213. It was placed among the papers relating to the foregoing transaction, but was not brought to the attention of Mr. Archer, the bank official handling the escrow, until after Joslin's death on October 22, 1946, as that official was away on a vacation.

On December 17, 1946, plaintiff filed a "Complaint for Damages," naming as defendant the Bank of Willits and Leta L. Noonan, praying judgment in the sum of $3,000 for the refusal of defendants to pay said sum to him on demand. On or about December 20, 1946, D. C. Smith was appointed and qualified as administrator of Joslin's estate, and defendants thereafter gave notice of a motion to substitute the administrator in their place as defendants in said action, asserting that they claimed no interest in the said $3,000 and that the administrator claimed same, and asking leave to deposit said sum with the court to await a determination of whether plaintiff or said administrator was entitled thereto. On January 17, 1947, the court made such an order, also ordering that

the complaint be amended accordingly and served upon the administrator. On January 20th, the money was deposited with the clerk of the court, and on January 31st, plaintiff filed an amended complaint, making Smith a defendant, but retaining both the bank and Mrs. Noonan as defendants. Smith demurred to that complaint and his demurrer was sustained with leave to amend. A second amended complaint was then filed, the same defendants being named. Thereupon the trial court made an order dismissing the action as to the bank and Mrs. Noonan, and amending the title accordingly. On July 28th and 29th, the action was tried by a jury and resulted in a unanimous verdict for defendant Smith. Judgment was entered thereon, and a motion by plaintiff for a new trial was subsequently denied. Plaintiff then appealed from the judgment and also from the order of substitution of defendants and the order dismissing the bank and Mrs. Noonan. However, before this court but one point is urged, and that is that the trial court misdirected the jury as to the applicable law, and erred in refusing to give one instruction requested by appellant, all involving the effect of the writing of October 17, 1946, given by Joslin to the bank.

The instructions given, to which exception is taken, are:

"I instruct you that a bill of exchange is an unconditional order in writing, addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand or at a fixed or determinable future time a certain sum in money to order or to bearer.

"I instruct you that it is the rule that a check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank and that the drawee's authority to pay it is revoked by the drawer's death before payment or acceptance.

"If the bill of exchange as hereinabove defined is given for a valuable consideration, such operates as an equitable assignment, may be enforced as such, and the death of the maker in such an event is immaterial.

"I instruct you that the order of A. H. Joslin, dated October 17, 1946, to make check for $3,000.00 to J. W. Holbrook, was not under the facts of this case an assignment of that amount to plaintiff unless it was supported by a valuable consideration. A valuable consideration is synonymous with a good consideration as the latter is defined under the law of this State. And in that behalf you are instructed that the term good consideration is defined as follows:

"Any benefit conferred or agreed to be conferred upon the promisor or by any other person to which the promisor is not lawfully entitled or any prejudice suffered or agreed to be suffered by such person other than such as he is at the time of consent lawfully bound to suffer as an inducement to the promisor is a good consideration for a promise. [This paragraph was given at plaintiff's request.]

"I instruct the Jury that a contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto have rescinded it."

The instruction refused reads:

"If you should find from the testimony and evidence introduced that Albert H. Joslin and his wife, Mary Elizabeth Joslin had made an agreement whereby, if Mary Elizabeth Joslin predeceased Albert H. Joslin, at the termination of Albert H. Joslin's life he was to leave the children of Mary Elizabeth Joslin the money or property originally turned over to Albert H. Joslin, and if you further find that pursuant to said agreement, Albert H. Joslin made, executed and delivered to Bank of Willits his authorization in writing directing said bank to pay the sum of $3,000.00 to J. W. Holbrook, then you must find in favor of plaintiff."

Appellant's theory, as stated in his brief, is that there was an assignment to him of a part of a particular fund in the hands of Bank of Willits; that this fund was in the form of an escrow, and even though at the time of the delivery of the order relied upon by plaintiff, the fund may not have actually been in existence, it did have a potential existence, and insofar as the facts of this case are concerned and the law involved, it was a particular fund in the hands of the bank in the nature of a bailment; that holding money in escrow to be returned to the *vendee* if title is found to be defective, and to be paid to the *vendor* if title is approved renders the bank holding such escrow a bailee; that there was no relationship of debtor and creditor; that the moneys in the hands of the bank were in the nature of a special deposit, and in the eyes of the law, the bank stood as a bailee and not as a mere creditor; and that an order drawn upon a particular fund constitutes an equitable assignment even though there may have been a gift involved.

We note that in his second amended complaint plaintiff alleged that the order of October 17th was executed for a valuable consideration; and on the trial he asserted that the entire case rested upon whether or not there was any consid-

eration and that this was a question of fact. ▮ An appellant may not be permitted to change his theory on appeal. (*Ernst* v. *Searle*, 218 Cal. 233, 240, 241 [22 P.2d 715] ; *Hayward Lbr. & Inv. Co.* v. *Ford*, 64 Cal.App.2d 346, 354 [148 P.2d 689].)

Appellant attempted to show a consideration by his own testimony and that of his sister, Mrs. Stover, which testimony was, in substance, 'that some 12 or 15 years before the trial, and after the marriage of Joslin and his wife, who was the mother of plaintiff, Mrs. Stover, and George Holbrook, all three children by a former marriage, Mr. and Mrs. Joslin had had a conversation in the presence of plaintiff and Mrs. Stover, in which Mrs. Joslin had said that she wanted the property she owned, ''or as much of it as was available at the time of both of their deaths to go to us children,'' and he (Joslin) had said ''that was perfectly alright with him''; that on October 17, 1946, plaintiff had had a conversation with Joslin just prior to an operation which the latter was to undergo, in which the latter said ''I believe I will go down to the bank and have them transfer your name on that check I am supposed to get for $3,000, so in case I die, why, I will have done what I agreed to do.'' Nothing further was said to explain what Joslin meant by that statement. Plaintiff further testified, however, that Joslin had added that if his operation was successful he expected to get the money back. No other consideration for the order is or was claimed by appellant.

▮ Respondent contends that the moneys received by the bank for Joslin constituted a general fund in its hands and not a special one. He cites 4 California Jurisprudence 185, where it is said that bank deposits are either general or special, a general deposit being one which is to be repaid upon demand, in money, and a special deposit being one where the depositor is entitled to the return of the identical coin or other article deposited; that a deposit will always be deemed general unless made special by agreement; and that even if the reason for the deposit be known to the bank to be an obligation owed by the depositor to a third person, nevertheless the depositor must, at the time of making the deposit, specify that the funds are to be kept apart from other moneys of the depositary and devoted only to the payment of the depositor's debts.

*People* v. *California Safe Deposit & Trust Co.*, 23 Cal. App. 199 [137 P. 1111, 1115], *American Surety Co.* v. *Bank of Italy*, 63 Cal.App. 149 [218 P. 466], and *Allen* v. *Rainey*, 4

Cal.App.2d 558, 563 [41 P.2d 374], are cited by respondent as authority for the rule that a deposit is deemed to be general unless made special by agreement; and he points out that when Joslin wrote the bank, on September 28, to "make cashier's check to me" he impliedly invited the bank to commingle the money it received from the buyer of the property with its own.

The evidence indicates that the buyers secured a loan from the bank to pay off the balance due on the property sold, and whether the money lent was credited to Joslin's account or not does not appear. It does appear, however, that Joslin authorized the bank to accept same "for his account," to pay therefrom certain charges and to make a cashier's check to him, Joslin, for $3,360. In order to do those things the money had to be mingled with the bank's funds.

■ The case of *Fidelity Savings & Loan Association* v. *Rodgers,* 180 Cal. 683 [182 P. 426], appears to be similar to the case before us and to be decisive against appellant. There Sarah Rounds deposited with plaintiff association a sum of money in excess of $3,500. Thereafter she made and delivered to Z. L. Parmelee the following order:

"Los Angeles, Cal., Nov. 8th, 1915.

"Received of Fidelity Savings & Loan Association $3500.00 thirty-five hundred and no/100 dollars.

"Charge to account of Sarah C. Rounds.

"Pay to Z. L. Parmelee.

"Sarah C. Rounds."

Said order was given to Parmelee in trust to collect the money from plaintiff and apply it to the construction of a building to be used as a school. There was no other consideration for it. Parmelee demanded payment of the order, but was refused because the association had been informed that Mrs. Rounds was not of sound mind, though this was not true; but one month after the execution and delivery of the order Mrs. Rounds died, and Rodgers, the executrix of her estate, then demanded that plaintiff association pay the money to her. The court said that nowhere in the record was it expressly stated whether the money deposited by Mrs. Rounds with plaintiff was received by it as a mere bailment of the identical money, or as a credit in her favor; that the expressions used, however, showed that it was regarded and treated by her as an "account" in her favor against plaintiff, to be paid out by it on her order; that both parties had discussed the case upon the theory that it was a general deposit for exchange or

credit, and it would be assumed that such was its character. It then went on to say, pages 686-687:

"The effect of such a deposit is to create the relation of debtor and creditor between the two parties concerned, the title to the money passing to the person with whom it is deposited and such person becoming the debtor of the depositor for the amount thereof. (Civ. Code, §§ 1818, 1878; *Shoemaker* v. *Hinze*, 53 Wis. 116, [10 N.W. 86]; *Talladega Ins. Co.* v. *Landers*, 43 Ala. 115.)

"The instrument executed by Mrs. Rounds to Parmelee was, therefore, an order by a creditor to a debtor to pay the debt, or a part thereof, to a third person. Although it contains many unnecessary words, it is, in legal effect, a bill of exchange. (*Wheatley* v. *Strobe*, 12 Cal. 92, 97, [73 Am.Dec. 522]; Civ. Code, § 3171.) It does not purport to transfer to Parmelee the title to the money mentioned nor to the debt or obligation of the plaintiff to repay the same to her, but merely directs the plaintiff to pay to Parmelee the said sum of money. Consequently it is not in form, or in legal effect, a present assignment to Parmelee of the right or title to the money or to the obligation therefor. (*Cashman* v. *Harrison*, 90 Cal. 302, [27 P. 283]; *Lawrence Nat. Bank* v. *Kowalsky*, 105 Cal. 43, [38 P. 517].) Being in legal effect a bill of exchange, it did not create a legal obligation from plaintiff to Parmelee until it was accepted by the plaintiff and such acceptance could not be made except in writing. (Civ. Code, § 3193; *Wheatley* v. *Strobe*, *supra*.) It was not accepted in any manner, consequently it does not constitute a direct obligation on the part of the plaintiff to pay the money to Parmelee. It is executory in character, a mere order directing that the money be paid by plaintiff to Parmelee, but accomplishing no transfer of title until the intended transaction should be completed by a transfer of the possession, or, it may be, by the written acceptance of the plaintiff. If it had been given for a valuable consideration, it would have operated as an equitable assignment of the demand of Mrs. Rounds against the plaintiff for the sum of money, and could have been enforced as such. (*Wheatley* v. *Strobe*, *supra*; *Pope* v. *Huth*, 14 Cal. 406; *Pierce* v. *Robinson*, 13 Cal. 121; *Joyce* v. *Wing*, 87 Cal. 424, [25 P. 545]; *Curtner* v. *Lyndon*, 128 Cal. 36, [60 P. 462].) But it was intended as a gift in trust and was without valuable consideration. It is the settled doctrine that an order or writing for the payment of money or the delivery of property which

does not by its legal effect constitute an assignment and which is executed as a gift and for no other consideration, will not be upheld or enforced as an equitable assignment. (*Pullen* v. *Placer County Bank*, 138 Cal. 175, [94 Am.St.Rep. 19, 66 P. 740, 71 P. 83] ; *Brokaw* v. *Brokaw*, 41 N.J.Eq. 221, [4 A. 66] ; 5 Cor.Jur., p. 931.)''

And it concluded that the transaction constituted an uncompleted attempt to make a gift in trust, which vested no right in the donee, and that the trial court was in error in concluding that Parmelee was entitled to the money.

The Rodgers case is cited with approval in *Baumgarten* v. *California Pacific T. & T. Co.*, 127 Cal.App. 649 [16 P.2d 332] (hearing in Supreme Court denied), where the court said at page 656 :

''The above order, [on the escrow holder] being one for the payment to respondent of a part only of the whole fund due the drawer and never having been accepted by the drawee, cannot be said to constitute a legal assignment, *pro tanto,* of the obligation due the Blackmore Investment Company or of any part thereof. (*Donohoe-Kelly Banking Co.* v. *Southern Pac. Co.*, 138 Cal. 183 [71 P. 93, 94 Am.St.Rep. 28] ; *Fidelity Sav. etc. Assn.* v. *Rodgers,* 180 Cal. 683 [182 P. 426] ; *Guggenhime & Co.* v. *Lamantia,* 207 Cal. 96 [276 P. 995, 997] ; *Harlan* v. *Gladding, McBean & Co.,* 7 Cal.App. 49 [93 P. 400].)''

In *Shoemaker* v. *Hinze,* 53 Wis. 116 [10 N.W. 86], cited in *Fidelity Savings etc. Assn.* v. *Rodgers, supra,* plaintiff requested defendant to take care of $40 for him. Defendant received the money and put it in his wallet with other money of his own. He thereafter took out a portion of the money in the wallet for use, and also added $100 thereto. His wallet was stolen. In an action by plaintiff to recover the amount deposited with defendant, the court held that the transaction did not constitute a bailment but a general deposit.

The instructions given to which appellant takes exception are in conformity with the rules laid down in the foregoing cases. And as for the argument of appellant that there was an assignment for which a valuable consideration was given, as hereinbefore stated appellant conceded on the trial that whether there was such consideration was a question of fact for the jury ; and they resolved it against him.

As for the contention that the court erred in refusing to give the instruction requested by plaintiff set forth above, the instruction was properly refused, since it does not

contain all of the elements essential to a recovery by plaintiff, and the missing elements are not elsewhere stated in the instructions. (See *Mazzotta* v. *Los Angeles Ry. Corp.*, 25 Cal.2d 165, 169-170 [153 P.2d 338], and cases there cited.)

The judgment and the orders appealed from are affirmed.

Thompson, J., and Peek, J., concurred.