[Civ. No. 16680.   Second Dist., Div. Two.   July 26, 1949.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Respondent, v. BOARD OF SUPERVISORS OF THE COUNTY OF LOS ANGELES et al., Appellants.

Harold W. Kennedy, County Counsel, John D. Maharg, Deputy County Counsel, Ray L. Chesebro, City Attorney, Leon T. David, Assistant City Attorney, and Louis A. Babior, Deputy City Attorney, for Appellants.

Samuel B. Stewart, Jr., Hugo A. Steinmeyer and Robert H. Fabian for Respondent.

WILSON, J.—The sole question to be determined is whether escrow funds on deposit in a national bank on the first Monday of March are assessable to the bank as solvent credits owned, claimed, possessed or controlled by it.

This appeal is from a judgment declaring that the assessment levied against respondent on escrow funds held by it, together with taxes and penalties, was erroneous, illegal and void, directing the board of supervisors to order the cancellation thereof and the county counsel and city attorneys of those cities sharing in the taxes collected by the county to consent in writing to such cancellation and ordering that a writ of mandate issue.

On March 5, 1947, the County Assessor of Los Angeles County made a demand upon respondent for "a return of all monies held by you as an escrow company or agent, when such money represents an escrow deposit or escrow payment in your possession on the first Monday of March at noon," such monies having been considered by the assessor as solvent credits. Pursuant to this demand respondent filed a property statement "as agent and escrow holder for the respective parties to the several escrows listed herein" asserting that it held the money for the account of the persons whose names and addresses were set forth, subject to escrow instructions. Thereafter the amount shown on such property statement was assessed as "solvent credits" against "Bank of America National Trust and Savings Association escrow agent and trustee." Respondent thereupon petitioned the board of supervisors to declare the assessment invalid. The board having no power to cancel it without the consent of the

county counsel (Rev. & Tax. Code, § 4986*), who refused such consent, denied the petition. Respondent then filed this action for a writ of mandamus to compel cancellation.

Solvent credits are defined in section 113 of the Revenue and Taxation Code as "all credits except notes, bonds and debentures" and credits are defined in section 112 as "solvent debts owing to the assessee . . ."

Appellants cite *Title Guaranty and Trust Co.* v. *County of Los Angeles*, 3 Cal.App. 619 [86 P. 844], as authority that funds placed in escrow may be taxed as solvent credits and the funds assessed to the escrow holder possessing or controlling such funds. In that case the title company deposited the funds in its bank and an assessment was levied upon it for the escrow money in the bank. Upon deposit of the funds there was a debt owing to the title company by the bank and thus there was a solvent debt owing to the assessee which was properly taxed as a solvent credit.

It is appellants' contention that respondent bank holds the escrow funds in the form of solvent credits as a fiduciary or trustee for the sellers; that respondent acts in a dual capacity, to wit, as a trustee and as a depositary, and that after it turned over the funds to the banking department in its capacity as a bank it was holding funds in the form of solvent credits.

It was the practice of respondent in escrow transactions, upon receiving a deposit, to open a liability ledger account in which the amount of the deposit was credited to the account of the depositing party, subject to escrow instructions. There was a separate deposit liability ledger account for each party depositing funds in an escrow transaction, the deposit being credited directly to the account of the party making the deposit. All such deposits were treated by respondent as creating a deposit liability to the depositor and were received, credited, accounted for, insured and reported to the comptroller of the currency in the same manner as any general demand deposits received by it. Respondent used these funds in its normal banking operations, such as for making loans, in the same manner as it used general demand deposits. There was no agreement between the parties to the escrow and re-

*Section 4986 requires the consent of the district attorney. "District attorney" means the civil legal adviser of the board of supervisors. (§ 4802.) In Los Angeles County the county counsel is the civil legal adviser of all county officers. (Los Angeles County Charter, § 21; Stats. 1913, pp. 1484, 1490.)

spondent that the monies deposited should not be commingled with other assets of respondent. The deposits were accompanied by escrow instructions directing respondent as to the manner in which they should be disbursed and authorizing respondent to pay out such deposits by its own check.

In support of their contention that respondent holds the escrow funds as trustee for the sellers, appellants cite several cases holding in effect that prior to the performance of the terms of the escrow the escrow holder is the agent of both parties to the escrow and when the conditions have been performed the escrow holder becomes the agent not for both but for each of the parties to the transaction in respect to those things placed in escrow to which each has become entitled. (*Shreeves* v. *Pearson,* 194 Cal. 699, 707 [230 P. 448]; *Law* v. *Title Guarantee & Tr. Co.,* 91 Cal.App. 621, 628 [267 P. 565]; *Newport Bay Dredging Co.* v. *Helm,* 120 Cal.App. 127, 133-135 [7 P.2d 1039].)

In the Shreeves case the question was whether the escrow had been so far performed as to render the escrow holder the agent of the seller and not of the buyer. The Law case was an action in equity brought by the vendee to procure a decree establishing the delivery of a deed which had been placed in escrow by the vendor. The court held that when the vendee had fully performed every requirement of the escrow contract on his part the escrow was terminated and the fact that the grantor subsequently died before the manual delivery of the instrument did not defeat the grantee of his right to possession of the deed. The court stated (p. 628) that "When the conditions upon which the deposit of the instrument have been fully performed, the relationship of the interested parties automatically changes and the depositary is then deemed to hold the instrument as a trustee for the party entitled thereto" and "upon the happening of the event or the performance of the condition upon which manual delivery should be made by the depositary to the grantee . . . thenceforth the depositary or holder is regarded as the mere agent or trustee of the grantee." In the Newport Bay Dredging Company case plaintiff delivered a deed to his agent with instructions to deliver it upon the signing of a contract. The court held that although plaintiff could have revoked the agent's power and recalled the deed before the agent had exercised his authority, when he had fulfilled his instructions and had exercised the authority given him he became more than plaintiff's

agent and held the position of trustee of the deed for the benefit of the grantee.

None of the foregoing cases involved escrow deposits in a bank and the question in each being entirely foreign to that in the instant case none of them can be considered as authority that when a bank acts as escrow holder it is a trustee of the funds deposited with it or that a debtor-creditor relationship does not exist between the bank and the parties to the escrow.

In *Los Angeles Tr. & Sav. Bank* v. *Ward,* 197 Cal. 103 [239 P. 847], plaintiff sought to be reimbursed for its attorneys' fees upon the theory that the privileges and duties of an escrow holder are closely analogous to those of a trustee of an express trust. In that case the court, after discussing cases in which an escrow holder is referred to as a trustee states (p. 109) : ''It is readily apparent from each of these quotations that the escow-holder is referred to as a 'trustee' *only* in those instances where he is to deliver a deed to the grantee upon the death of the grantor and he is so regarded merely to preclude the termination of his authority upon the grantor's death; in all other cases an escrow-holder is referred to as the 'agent' of the parties . . . Though, as indicated, an escrow-holder has, at times, been referred to as a 'trustee,' in most instances he is looked upon as the mere *agent* of the parties.''

Respondent contends that it is not a trustee, that the deposits in escrow were general deposits creating a debtor-creditor relationship. Appellants, upon the other hand, argue that the funds are deposits for a special purpose which precludes the use of the funds by the depositary and that since the depositor remains the equitable owner of the funds a debtor-creditor relationship does not exist.

Appellants concede that in the case of normal demand deposits the bank becomes owner of the funds deposited and a debtor-creditor relationship results, but they contend that a deposit for a specific or special purpose resembles a special deposit in that the depositor retains ownership of the funds and the transaction results in a trust or fiduciary relationship.

▪ A deposit in a bank is general unless there is an agreement or understanding that it should be special or there are circumstances which give to the transaction the nature of a special deposit. (*Bank of America* v. *California Sav. & Com. Bank,* 218 Cal. 261, 273 [22 P.2d 704] ; 5 Michie on Banks and Banking, p. 624.) Money deposited with a bank for a

particular purpose but, with the depositor's consent, commingled with other funds is a general deposit. (*Holbrook* v. *Smith*, 87 Cal.App.2d 66, 71-72 [196 P.2d 84]; *Cabrera* v. *Thannhauser & Co.*, 183 Cal. 604, 609 [192 P. 45]; 5 Michie on Banks and Banking, p. 643.) A deposit will always be deemed to be general unless made special by agreement and something more than the intent of one party to the deposit is necessary—the intent of both parties must be shown to concur. (*People* v. *California Safe Dep. & Tr. Co.*, 23 Cal. App. 199, 206 [137 P. 1111, 1115]; *Allen* v. *Rainey*, 4 Cal. App.2d 558, 563 [41 P.2d 374].) "If money is deposited in a bank for a special purpose, the bank is a trustee or bailee of the money if, but only if, it is the understanding of the parties that the money deposited is not to be used by the bank for its own purposes." (1 Restatement, Trusts, § 12, com. h, p. 46.)

*Bank of America* v. *California Sav. & Com. Bank*, 218 Cal. 261 [22 P.2d 704], and *Burket* v. *Bank of Hollywood*, 9 Cal.2d 113 [69 P.2d 421], cited by appellants in support of their contention, involve claims against insolvent banks, the cases holding that the depositors are entitled to a preference over general creditors in the event of the bank's insolvency. In the Burket case, the court stated that the record of the transactions on the books of the bank clearly showed that the money on deposit in the escrow account at the time the bank closed its doors was no part of the general assets. In the Bank of America case the question presented was whether the plaintiff banks and others, to whom defendant was admittedly indebted, were general depositors and creditors of the defendant bank or were entitled to receive payment in full as preferred creditors or special depositors.

In the latter case the court held that when the nature of the transaction is such that it must be said the depositor does not intend that the funds deposited shall become part of the general assets of the bank, it becomes the duty of the bank at all times to keep on hand cash in a sum equal to such deposit and the amount thereof constitutes a fund which the bank is not authorized to use in its general banking operations. Such deposits although not within the definition of special deposits are deposits made for a special purpose and as to such funds, *in the event of the bank's insolvency,* the depositors are entitled to a preference to the extent that the bank's cash has not been reduced below the amount of such deposits. Such depositors do not have a prior lien on all general assets of

the bank in preference to other depositors but a preference in the lowest cash balance between the date of deposit and the closing of the bank. The court stated that special depositors are "in effect" tracing and reclaiming their own property rather than asserting a preference in the bank's general assets so that if the bank's cash balance at any time after receipt of the special deposit falls below the amount thereof the identity of the special funds is lost and the preference of the special depositors does not extend to the general assets or to subsequent increases in the cash balance but as to such receipts the special depositors are on a par with general depositors.

Appellants cite section 2 of the Bank Act (Stats. 1909, p. 87; 1 Deering's Gen. Laws (1944 ed.), Act 652, p. 195) and section 2(b) of the Escrow Act (Stats. 1947, ch. 921, p. 2126; 1 Deering's Gen. Laws (1947 Supp.), Act 2365) in support of their assertion that deposits in escrow do not create ordinary general demand deposits. Although section 2 of the Bank Act (as amended, Stats. 1913, ch. 104, p. 137) provides that the taking of money or its equivalent in escrow by an agent shall not constitute the doing of a banking business, it also provides that banks are divided into three classes, namely, savings banks, commercial banks and trust companies. And there is nothing in section 6 of the Bank Act, defining "trust company," to indicate the business of acting as agent or escrow holder is considered the business of a trust company. Section 2(b) of the Escrow Act defines an escrow but section 3 provides the act does not apply to any person doing business under any law of this state or of the United States relating to banks, trust companies, building and loan associations or insurance companies.

Section 11(k) of the Federal Reserve Act (38 Stats. 261, 12 U.S.C.A., § 248(k), p. 642) provides that a national bank shall not commingle funds held in trust with other funds used in the conduct of the business of the bank unless the bank shall first provide collateral security for such deposits. The record does not indicate whether security was deposited by respondent but it does show escrow deposits were received, credited, accounted for, insured and reported to the comptroller of the currency as normal demand deposits.

In the instant case, it is unnecessary to determine whether the escrow funds are a general deposit, as contended by respondent, or a deposit for a special purpose, as contended by appellant, since in either event the funds are debts owing

by the bank to one or the other of the parties to the escrow and consequently are not assessable to the bank as solvent credits. Furthermore, even if the bank were considered to be a trustee of the money deposited in escrow and there were no debtor-creditor relationship, the assessment is invalid as an assessment on solvent credits.

Appellants' argument that after respondent received the funds in the capacity of escrow holder it turned them over to the banking department and thus there was a solvent credit owing by the bank to itself as escrow holder is not tenable. Upon receipt of the money respondent credited the funds to a deposit account in the name of the party depositing the money and held the account subject to escrow instructions.

Unquestionably the funds are taxable but they are assessable as solvent credits of the parties to the escrows and are not solvent credits owned, claimed, possessed or controlled by the bank and are not assessable to the bank.

Judgment affirmed.

Moore, P. J., concurred.

McComb, J., deeming himself disqualified, did not participate herein.

A petition for a rehearing was denied August 15, 1949, and appellants' petition for a hearing by the Supreme Court was denied September 19, 1949.