[Civ. No. 22205.   Second Dist., Div. Two.   Nov. 20, 1957.]

HOME ESCROW SERVICE CORPORATION (a Corporation), Respondent, v. COUNTY OF LOS ANGELES, Appellant.

336

Harold W. Kennedy, County Counsel, and Gordon Boller, Assistant County Counsel, for Appellant.

Samuel A. Greenburg, and Adrian A. Kragen for Respondent.

O'Melveny & Myers, Sidney H. Wall and Philip F. Westbrook, Jr., as Amici Curiae on behalf of Respondent.

FOX, Acting P. J.—Plaintiff's demand for a tax refund having been denied, it brought this action to enforce repayment. Upon judgment being rendered for plaintiff, the county appealed.

Plaintiff is engaged in the business of handling escrow transactions involving the sale or encumbrance of both real and personal property. In the course of these escrows funds are delivered to the plaintiff to be used in connection with the particular transaction. The escrow instructions provide that "all funds deposited in this escrow shall be placed by you in a trust account in your name in a Chartered Bank designated by you." Financial Code, section 17409, provides that all escrow funds shall be deposited in a bank and kept separate from funds belonging to the escrow agent. The section further provides that such funds, when so deposited, are to be designated as "trust funds," or "escrow accounts," or under other appropriate designation indicating that the funds are not the funds of the escrow agent. (See also Cal. Admin. Code, tit. 10, § 1737.) In accordance with the agreement of the parties and the statutory direction, plaintiff deposited all funds from its several escrows in separate bank accounts. The deposits were made in plaintiff's name and were designated "Trust Account."[1]

In making its property statement to the county assessor, plaintiff gave the total of its bank deposits that consisted of escrow funds. Plaintiff indicated its inability to identify on the taxing date the parties who were the several owners of or entitled to the funds involved in the respective escrows. It did offer, however, "to give to the agents of defendant a list of its pending escrows upon the assessment date, together with the names and addresses of the parties thereto and the amounts of money on deposit in each escrow," and "to open all its books and records to the defendant." In this factual setting the tax assessor levied an assessment against plaintiff on the solvent credits growing out of the above mentioned bank deposit. Plaintiff paid the tax thus assessed[2] under protest, filed a claim for refund, which was denied, and then brought this action to recover such payments on the theory that the "plaintiff was not the owner of the moneys upon which said solvent credits tax was levied"; that "the money upon which it was based was money belonging to various buyers and

---

[1] Plaintiff had such "trust account" for each of its branches.
[2] The tax here involved was for the years 1951, 1952 and 1953.

sellers of real property who had employed plaintiff as escrow holder to hold such deposited sums for them pending completion of clearing title to the real property and for business properties being purchased. That said money was the property of said depositors and was assessable to said depositors and not to this plaintiff.''

The trial court concluded that plaintiff in the circumstances ''is not a trustee nor an agent, but is solely a stakeholder. That escrow funds on deposit with plaintiff escrow holder are taxable, but they are assessable as solvent credits of the parties to and having an interest in the escrow and were not solvent credits owned, controlled or possessed by the plaintiff so as to be subject to solvent credits tax.''

In arriving at a decision in this case it is important to bear in mind the character of property that was assessed for taxes. The crucial question then is: What was plaintiff's relationship to that property?

The property here assessed is not the funds in the hands of plaintiff that have been turned over to it by the various escrow parties. Those funds were not in plaintiff's possession on the assessment date (the first Monday in March) for they had been deposited in the bank in its name in a trust account in accordance with the agreement of the parties to the escrow and in harmony with statutory regulations. █ Upon the deposit in the bank by plaintiff of the funds the parties to the several escrows had delivered to it, a debtor-creditor relationship arose between the bank and plaintiff. The bank was of course the debtor. Plaintiff, having made the deposit, was the creditor. █ The credit (generally referred to as a ''solvent credit'') thus arising from the deposit, is a species of property, an intangible, is subject to taxation (*Pacific Coast Sav. Soc.* v. *City & County of San Francisco*, 133 Cal. 14 [65 P. 16]) and is the particular property that was assessed and taxed to plaintiff in this case.

Every person is required to file a property statement with the assessor (Rev. & Tax. Code, § 441) showing ''all taxable property owned, claimed, possessed, controlled, or managed'' by the person making the statement (Rev. & Tax. Code, § 442). ''The situs of intangibles for taxation is the domicile of the owner or claimant . . .'' (Rev. & Tax. Code, § 1056.) ''Intangibles held in trust . . . in this State are taxable solely to the trustee.'' (Rev. & Tax. Code, § 1058.)

Under the escrow agreement between plaintiff and the other parties thereto it was expressly provided that the funds deliv-

ered to plaintiff would be deposited by plaintiff in its name in a bank in a trust account. Upon those funds being so deposited plaintiff became the owner of the solvent credits thus created. But plaintiff was not the beneficial owner thereof since by the agreement of the parties such clearly was not intended. Plaintiff's ownership of the solvent credits was as a trustee for the benefit of the persons who ultimately would be entitled to the money which the solvent credits represented. Regardless, however, of the right of any party to the escrow to require plaintiff to pay over funds upon performance of the terms and conditions specified in the escrow agreement, it is apparent that while the funds were on deposit in plaintiff's name in the bank such party did not have title to them and was not an owner thereof. The bank had title and was the owner for it was a debtor by reason of their deposit in it. As trustee of these solvent credits plaintiff held title thereto and was owner thereof within the meaning of section 442 of the Revenue and Taxation Code and was properly assessed as the owner of the property in question.

Plaintiff also came within the purview of section 442 on the theory that it "possessed" and "controlled" these solvent credits. The bank deposits were in plaintiff's name. It had possession of the documents the bank issued as evidence of the transaction. As above pointed out, plaintiff held title to these solvent credits as trustee. They came into existence by the act of plaintiff in making the deposits, pursuant, of course, to the agreement of the escrow parties. Plaintiff has done nothing to dissociate itself from these property rights. In these circumstances it may fairly be said that these solvent credits are "possessed" by plaintiff.

That plaintiff "controlled" these solvent credits does not seem debatable on any realistic basis. As the person in whose name the bank deposits were made, it follows, as the day the night, that it was on plaintiff's order and plaintiff's order alone that the bank paid out any funds in this trust account. The bank had no knowledge of whom the ultimate beneficiaries might be or when or under what circumstances such parties might become beneficiaries or to what extent; and of course the bank did not have and would not have any authority to honor a check from any such party. It is crystal clear that since only on plaintiff's order could funds be withdrawn from its trust account in the bank, that plaintiff "controlled" such account and thus "controlled" the solvent credits flowing from the deposits plaintiff, from time to time, made in such account.

It is control of the account and the solvent credits created thereby and not control of plaintiff as depositor or trustee of the solvent credits that is here decisive.

Our analysis and conclusion find support in *Title Guaranty & Trust Co.* v. *Los Angeles,* 3 Cal.App. 619 [86 P. 844]. That case is strikingly similar in its facts to the case at bar. It was a suit by an escrow holder to recover taxes levied against it as a result of escrow funds it had deposited in a bank. The facts, as stated by the court, were: "A verified statement of property for taxation for the year 1904, showing deposits to the amount of $3,650, and no more, had been given in to the assessor by the plaintiff; and afterward there was included in the plaintiff's assessment by the assessor the following item: 'Escrow money in Merchants' National Bank. $55,000.' The latter amount was held by the plaintiff as agent or trustee for the owners and purchasers of various tracts of land (twenty-two in number) whose titles it had been employed to pass upon—and was to be paid to the owners, or returned to the purchasers (with deduction of charges), according to the result of the search. The question involved is, whether this property was assessable to the plaintiff; and this question, we think, must be answered in the affirmative." The court pointed out (p. 621) that *the property assessed "was a fund consisting of credits due from the bank to the plaintiff, over which it had in fact absolute control as agent or trustee of the parties interested in the fund."* (Emphasis added.) This court, in *Bank of America* v. *Board of Supervisors,* 93 Cal.App.2d 75, at page 77 [208 P.2d 772], in commenting on the Title Guaranty case, stated: "Upon deposit of the funds there was a debt owing to the title company by the bank and thus there was a solvent debt owing to the assessee which was properly taxed as a solvent credit." The court further observed in the Title Guaranty case that "Its [plaintiff's] obligation to the various parties interested in the fund was not that of debtor, but of agent or trustee. Hence, had the facts been disclosed to the assessor by the plaintiff, as under the provisions of section 3629 they should have been, the assessment should have been made to it as agent or trustee of the various parties interested in the fund. (Pol. Code, § 3639.) But in the absence of this information, the assessor had no other resource than to assess the property to the plaintiff, as required by section 3628, as agent or trustee of parties unknown to him, which he in effect did."

It is apparent in the cited case that the plaintiff, as in the instant case, failed to inform the assessor as to who was the

beneficial owner of the deposits on the assessment date. Hence, says the court, it was proper to assess the property to the plaintiff "as agent or trustee of parties unknown" to the assessor. Here plaintiff seeks to obviate this difficulty by disclaiming its ability to determine who are the beneficial owners of the fund on the first Monday in March and by making its escrow files available to the assessor for his determination of such ownership. Plaintiff's president estimated that 40,000 escrows had been handled under his supervision, but asserted that he was unable to determine the beneficial ownership of the deposited funds on the taxing date. Yet, plaintiff expects the assessor and his deputies to determine these matters when those working daily in the business are unable to do so. This borders on the absurd. If, on the other hand, the facts regarding the deposit of the escrow funds had been disclosed to the assessor by plaintiff, as they should have been pursuant to the statute, "the assessment," says the court, "should have been to it as agent or trustee of the various parties interested in the fund." Thus, under the authority of the Title Guaranty case, the assessment in the instant case against plaintiff was proper either on the theory that it was trustee of the solvent credits in question for the persons known to have an interest therein, or a trustee of such property for other persons who had an interest therein but who were unknown to the assessor. The Title Guaranty case is cited and quoted at length in *S. W. Straus & Co.* v. *Los Angeles County,* 128 Cal.App. 386 [17 P.2d 757] (hearing denied) ; see also *S. & G. Gump Co.* v. *San Francisco,* 18 Cal.2d 129, 131 [114 P.2d 346, 135 A.L.R. 595].

Finally, any question regarding the propriety of the assessment herein is put to rest by the specific provisions of section 1056 of the Revenue and Taxation Code. The solvent credits here assessed are intangibles. They are held in trust by plaintiff, which is a corporation operating and domiciled in this state. Hence under the express terms of the cited code section, they are "taxable solely to the trustee," i.e., to the plaintiff.

Plaintiff relies principally on *Bank of America* v. *Board of Supervisors,* 93 Cal.App.2d 75 [208 P.2d 772]. That case is not here applicable. The distinction is clearcut and decisive. In that case the bank handled escrow transactions, as does the plaintiff here. In such transactions the bank, upon funds being paid into the escrow, "*credited the funds to a deposit account in the name of the party depositing the money.*"

(P. 82.) As the court described the *modus operandi* earlier in the opinion (p. 77), "There was a separate deposit liability ledger account for each party depositing funds in an escrow transaction, the deposit being credited directly to the account of the party making the deposit." The bank thus became the debtor and the escrow party who had furnished the funds and in whose name they were deposited was the creditor. The depositor was the owner of the solvent credit that was created by the deposit of the funds in the bank in his name. The bank did not own the solvent credit. It owned the money; it was a debtor. Consequently there was no solvent credit growing out of such a transaction on which it could be assessed and taxed. Here, however, plaintiff deposited the escrow funds *in its own name* in a trust account—not in the name of the escrow party who provided them. As previously pointed out, the debt created by this bank deposit was owing to plaintiff and was properly taxed to plaintiff as a solvent credit. (*Bank of America* v. *Board of Supervisors, supra,* p. 77.) It is thus obvious that plaintiff's relation to the solvent credits involved in the instant matter is entirely different from the bank's relation to such credits in the Bank of America case.

Plaintiff relies on *Weyse* v. *Crawford,* 85 Cal. 196 [24 P. 735], where the plaintiffs, owners of a warehouse, gave the assessor a statement of the taxable property belonging to them and a description of the property stored with them but explained that they had issued negotiable warehouse receipts therefor and they could not give the assessor the names of the persons to whom the stored property belonged for the reason that they had no way of determining the owners. The court held that plaintiffs were but naked bailees and that possession in such capacity did not justify assessment against them. Plaintiff here relies particularly upon the comment that "To make the party liable to assessment, his possession must be one that carries with it the usual marks and indications of ownership." ██ Of course, "it is elementary that the language used in any opinion is to be understood in the light of the facts and the issue then before the court." (*Eatwell* v. *Beck,* 41 Cal.2d 128, 136 [257 P.2d 643]; *DeMonbrun* v. *Sheet Metal Workers,* 140 Cal.App.2d 546, 565 [295 P.2d 881].) The Weyse case dealt with the assessment of tangible personal property which, in the absence of knowledge of its ownership, could be assessed to unknown owners, seized and sold by the assessor and the tax thereon realized. On the other hand, the property here subject to assessment consisted of solvent credits

over which plaintiff had absolute control. It was upon this basis that the court, in the Title Guaranty case, distinguished *Weyse* v. *Crawford*. Further, it is to be noted that in the situation involved in the Weyse case, the plaintiffs would be required to surrender possession of the property in their warehouse to any person presenting a proper warehouse receipt. In the instant case, however, plaintiff alone could withdraw the funds deposited in the trust account in the bank. It is thus apparent that the observation in the Weyse case with respect to ''possession'' is wholly inapplicable here.

Plaintiff contends that the imposition of the tax upon it is both inequitable and discriminatory. It asserts that it is in competition with banks engaged in the business of acting as escrow holders, and that the procedure followed by any bank so engaged is identical in effect to that followed by plaintiff. Noting the tax consequences in the Bank of America case, plaintiff concludes that achieving a different tax result depending solely on the form of the organization engaged in carrying out the transaction is inequitable and discriminatory. But plaintiff overlooks the fact that it is the owner of solvent credits deposited in the bank. As such it is subject to a tax assessment upon those solvent credits. In the Bank of America case the bank was in the position of debtor and not the owner of the solvent credits—they were owned by the depositors to whose accounts the funds were credited. It is therefore apparent there is no discrimination between banks and escrow companies since, in every case, it is the owner of the solvent credit who is assessed. Moreover, it should be noted that the fact that plaintiff will have to pay the tax and then pass it on to the proper party to the escrow by means of increased charges (as provided in the escrow agreement) will not place it at a competitive disadvantage with banks engaged in the escrow business. When a bank acts as an escrow holder the proper party to the escrow directly bears the tax. Thus, the equitable owner of the money in escrow ultimately pays the tax in each situation. Hence, no inequity results.

Plaintiff's contention that imposition of the tax upon it would result in unconstitutional double taxation is likewise without merit. As noted above, the only assessment levied is that upon the owner of the solvent credit created by the deposit in the bank.

The judgment is reversed with directions to enter judgment for defendant.

Ashburn, J., concurred.