Howard S. GOLDBLATT, Plaintiff–Appellant,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant–Appellee.

No. 95–56426.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 13, 1996.

Decided Feb. 3, 1997.

August 21, 1996, is denied.

Brad S. Kane, Weisman & Rosen, Los Angeles, CA, for plaintiff–appellant.

Jeannette E. Roach, Federal Deposit Insurance Corporation, Washington, DC, for defendant–appellee.

Before: FERGUSON, BEEZER, and TASHIMA, Circuit Judges.

FERGUSON, Circuit Judge:

The issue is whether the Individual Retirement Account ("IRA") maintained in this case is a general deposit or a special deposit. The petitioner, Howard Goldblatt, appeals the district court decision rejecting his claim that his IRA is entitled to preference in the distribution of an insolvent bank's assets by the Federal Deposit Insurance Corporation ("FDIC"), as receiver for the bank. We affirm the decision of the district court.

## I.

The case was decided below on cross motions for summary judgment. In 1988, Goldblatt opened an IRA account with the Bank of Beverly Hills Qualified Plans, Inc. as the Contract Administrator of the plan and the Bank of Beverly Hills as the Custodian of the account. The IRA was governed by a Custodial Agreement and qualified as a retirement plan under § 408 of the Internal Revenue Code, 26 U.S.C. § 408.

The Custodial Agreement provided, among other things, that the funds deposited into the IRA were to be invested only upon the direction of the depositor, and that the assets were not to be commingled with other property "except in a common trust fund or common investment fund." The agreement explicitly stated that the parties did not intend to confer any fiduciary duties on the Custodian or Contract Administrator and that the Custodian did not guarantee, nor in any way promise, a return of monies invested.

Pursuant to instructions from Goldblatt, the Contract Administrator liquidated securities in his IRA account and deposited the proceeds in BBH Account No. 61271400, a money market account insured by the Federal Deposit Insurance Corporation.

Subsequently, on April 3, 1992, the Superintendent of Banks for the State of California declared the Bank insolvent, appointed the FDIC Receiver for the Bank, and tendered to the FDIC as Receiver the remaining assets and liabilities of the Bank. On the date the Bank failed, Goldblatt's account contained $355,204.67. FDIC Corporate paid Goldblatt $100,000, representing the FDIC-insured portion of his account.

In May, 1992, Goldblatt filed a proof of claim with the FDIC, as receiver, to recover the amount remaining in his account, $255,204.67. On June 10, 1992, the receiver issued to Goldblatt a Receiver's Certificate of Proof of Claim, which stated that Goldblatt had made satisfactory proof that he was a creditor of the BBH Receivership in the amount of $255,204.67. The receiver concurrently paid $119,946.19 on Goldblatt's claim, leaving an unpaid balance of $135,258.48.

## II.

We review a grant of summary judgment de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id. Where there are no contested issues of fact, we need decide only whether the district court correctly applied the substantive law. Lane v. Goren, 743 F.2d 1337, 1339 (9th Cir.1984).

The district court had jurisdiction under 12 U.S.C. § 1819(b)(2). This court has jurisdiction to review the district court's grant of

summary judgment pursuant to 28 U.S.C. § 1291.

## III.

In this case, Cal.Fin.Code § 3119.5 governs the priority of claims.[1] It provides:

(a) Expenses and claims of unsecured creditors have priority in the following order:

(1) Expenses of liquidation and approved claims for fees and assessments due the department.

(2) Approved claims given priority under other provisions of state or federal law, including, but not limited to, Sections 3114 and 3240.[2]

(3) Approved claims for "deposits;" as that term is defined in 12 U.S.C. Section 1813(l), but including obligations of the type described in 12 U.S.C. Section 1813(l)(5)(A) and (B).

. . . .

Goldblatt claims that his account is entitled to priority under § 3119.5(a)(2) because his IRA was a "special deposit." We disagree.

### A. Goldblatt's IRA Was Not A Special Deposit

■ A deposit made in the ordinary course of business is presumed to be general unless there is a specific agreement to the contrary evidencing the intent of the parties to create a special or specific deposit. The burden is on the depositor to overcome this presumption. *Thompson v. Beitia,* 69 F.2d 356, 358 (9th Cir.1934). A special deposit may be shown where the parties' agreement provides that the exact amount of money deposited was to be returned or the money was to be paid out by the bank for a specific purpose, the money was to be segregated from other assets rather than available for the bank's general use, and the bank did not pay interest to the depositor in consideration of its use of the funds. *Van de Kamp v. Bank of America Nat. Trust & Savings Ass'n,* 204 Cal.App.3d 819, 251 Cal.Rptr. 530, 549–551 (Cal.Ct.App.1988); *Bank of America Nat. Trust & Savings Ass'n v. California Savings & Commercial Bank,* 218 Cal. 261, 22 P.2d 704, 709–711 (Cal.1933).

Here, the provision of the Custodial Agreement that the Custodian "does not guarantee, nor in any way promise, a return of monies invested," clearly states that the parties did not agree that the Bank would return the exact amount of money deposited and implies that the deposit was not a special deposit.

■ Although the agreement indicates that the deposited funds are to be paid out for a specific purpose, i.e. "for the exclusive benefit of the individual or his or her beneficiaries," this factor is not dispositive. "Money deposited with a bank for a particular purpose but, with the depositor's consent, commingled with other funds is a general deposit." *Bank of America Nat. Trust & Savings Ass'n v. Board of Supervisors of Los Angeles County,* 93 Cal.App.2d 75, 80, 208 P.2d 772, 775 (1949). Goldblatt specifically directed his IRA funds be invested in a money market fund held by the Bank, and thus, in accordance with the Custodial Agreement,

---

1. With respect to federally insured depository institutions for which a receiver was or will be appointed on or after August 10, 1993, Cal.Fin. Code § 3119.5 was superseded in large part by the enactment of 12 U.S.C. § 1821(d)(11), the "national depositor preference scheme." Because the Bank of Beverly Hills was declared insolvent in April, 1992, Cal.Fin.Code § 3119.5 governs the Goldblatt's claim to a preference.

2. Cal.Fin.Code § 3114 provides:
The superintendent from time to time shall deposit all moneys coming into his hands in the course of the liquidation of the bank in one or more state banks and in the event of the suspension or insolvency of the depositary they shall be preferred before all other deposits.

Cal.Fin.Code § 3240 provides:
The holder or transferor of a negotiable instrument transferred to a bank for collection has a preferred claim in the amount of the liability of such bank on such instrument if the instrument was forwarded to the bank by any person or by any other bank for collection and remittance, if payment therefor has not been made and if the same has been collected either in whole or in part by such bank, unless the holder or transferor is a voluntary depositor in the bank and the proceeds of the collection, at his request, have been credited by the bank to his account.

consented to the commingling of his assets with other funds of the Bank.

■ Finally, the money market fund to which Goldblatt directed his funds be invested was an interest-bearing fund, a factor which further supports the interpretation of this account as a general deposit.[3]

The Custodial Agreement specifically provided that the Bank owed no fiduciary duty to Goldblatt. Therefore the parties did not enter into a trust-type relationship. Such a relationship often accompanies deposits for a special purpose. *See Masi v. Ford City Bank and Trust Company*, 779 F.2d 397, 401 (7th Cir.1985) (special deposits constitute a trust relationship wherein the bank owes a fiduciary duty to the depositor); *Michie on Banks and Banking*, Ch. 6 § 186 (1996) (deposit paid out for a specific purpose usually creates a trust fund, entitled to preference over the claims of general creditors in the distribution of the assets of the insolvent bank).

The district court correctly concluded that Goldblatt did not overcome the presumption in favor of general deposits and therefore was not entitled to a preference in the distribution of the Bank's assets.

### B. "Nonforfeitable" Status of IRAs Does Not Provide a Preference

■ In accordance with the Internal Revenue Code ("IRC"), the Custodial Agreement provides that the depositor's interest in the custodial account balance is "nonforfeitable." 26 U.S.C. § 408(a)(4). Goldblatt claims since his IRA assets were "nonforfeitable," the FDIC is prohibited from distributing them to general creditors as part of the Bank's assets.

■ The IRC requirement that IRA assets be nonforfeitable has been found to preclude a bank from offsetting a borrower's defaulted loan debt with the borrower's IRA deposit. *Masi*, 779 F.2d at 401 (holding that punitive damages and attorney fees may be available against a bank which wrongly forfeited IRA funds to pay off the balance of a defaulted loan). 26 U.S.C. § 408(a)(4) has been held to prohibit forfeiture of IRAs in the criminal context as well. *See e.g., U.S. v. Infelise*, 938 F.Supp. 1352, 1371 (N.D.Ill. 1996). However, the provision does not apply where a depositor lost assets as a result of a bank's insolvency. The FDIC disbursed Goldblatt's IRA assets as part of the pro rata distribution of the Bank's assets because the Bank had become insolvent, not as a penalty to Goldblatt for failure to perform an obligation to the Bank. This use of Goldblatt's assets does not constitute a forfeiture.[4] Accordingly, the nonforfeitability provision of the contract does not provide Goldblatt's claim with a preference in distribution.

### C. ERISA Does Not Provide a Preference

■ Goldblatt argues that the Employee Retirement Income Security Act's ("ERISA") prohibition of alienation or assignment of pension plans reflects a policy of protecting retirement savings from outside parties and that this policy supports granting priority to his IRA under federal law. 29 U.S.C. § 1056(d)(1). However, 29 U.S.C. § 1051(6) specifically exempts pension plans that qualify as IRAs under 26 U.S.C. § 408 from ERISA's anti-alienation requirement. *Patterson v. Shumate*, 504 U.S. 753, 762–763, 112 S.Ct. 2242, 2248–49, 119 L.Ed.2d 519 (1992).

---

**3.** Goldblatt argued on appeal that this court should not consider the interest-bearing nature of the money market account because the stipulated facts did not specify whether or not the account was interest-bearing. However, the interest-bearing nature of money market accounts is a proper subject of judicial notice. *See* Fed. R.Evid. 201. Money market accounts were created in order to allow banks and thrifts to compete successfully for deposits against other financial intermediaries not bound by the interest rate ceilings applicable to banks, and "thrust depository institutions onto the same level playing field

as uninsured money market mutual funds." 135 Cong. Rec. H2739–03, (Statement of Hon. Stan Parris of Virginia, Before the House of Representatives, October 29, 1985).

**4.** A forfeiture is the deprivation or destruction of a right in consequence of the nonperformance of some obligation or condition, as a penalty for some illegal act, or because of breach of a legal obligation. *Black's Law Dictionary*, 6th Ed. (1990) 650.

The district court's grant of summary judgment against Goldblatt and in favor of the FDIC is AFFIRMED.